**LaMONICA HERBST & MANISCALCO, LLP**
*Counsel to Lori Lapin Jones, as Chapter 7 Trustee*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Gary F. Herbst, Esq.
Holly R. Holecek, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:                                                                      Chapter 7

143-30 SANFORD AVE LLC,                             Case No.: 23-43812-nhl

                          Debtor.
--------------------------------------------------------x

**MOTION FOR: (I) AN ORDER: (A) APPROVING A STIPULATION AMONG THE
CHAPTER 7 TRUSTEE, SANFORD FUNDING LLC AND GERARD A. GEISWELLER,
ESQ.; (B) AUTHORIZING THE SALE OF THE DEBTOR'S REAL PROPERTY; (C)
SCHEDULING A PUBLIC AUCTION SALE OF THE DEBTOR'S REAL PROPERTY;
(D) APPROVING TERMS AND CONDITIONS OF SALE TO GOVERN THE PUBLIC
AUCTION SALE OF THE DEBTOR'S REAL PROPERTY; (E) APPROVING THE
FORM AND MANNER OF NOTICE OF THE PUBLIC AUCTION SALE OF THE
DEBTOR'S REAL PROPERTY; (F) SCHEDULING A HEARING TO CONFIRM THE
RESULTS OF THE PUBLIC AUCTION SALE; AND (G) WAIVING THE 14-DAY STAY
PERIOD; AND (II) AN ORDER: (A) APPROVING THE SALE OF THE DEBTOR'S
<u>REAL PROPERTY; AND (B) GRANTING RELATED RELIEF</u>**

TO THE HONORABLE NANCY HERSHEY LORD,
UNITED STATES BANKRUPTCY JUDGE:

      Lori Lapin Jones, solely in her capacity as Chapter 7 Trustee ("<u>Trustee</u>") of the estate of

143-30 Sanford Ave LLC ("<u>Debtor</u>"), by her undersigned counsel, submits this motion ("<u>Motion</u>")

seeking entry of: (I) an Order, substantially in the form annexed hereto as **<u>Exhibit A</u>**

("<u>Authorization Order</u>"): (a) approving a stipulation ("<u>Stipulation</u>") among the Trustee, Sanford

Funding LLC ("<u>Lender</u>") and Gerard A. Geisweller, Esq. ("<u>Receiver</u>"), a copy of which is annexed

hereto as **<u>Exhibit B</u>**; (b) authorizing the sale of the Debtor's real property and improvements

located at 143-30 Sanford Avenue, Flushing, New York 11355 ("<u>Property</u>"); (c) scheduling a

public auction sale of the Property for Tuesday, June 25, 2024 at 10:30 a.m. ("<u>Sale</u>"); (d) approving

the proposed Terms and Conditions of Sale to govern the Sale, substantially in the form annexed hereto as **Exhibit C**; (e) approving the form and manner of notice of the Sale, substantially in the form annexed hereto as **Exhibit D**; (f) scheduling a hearing to confirm the results of the Sale; and (g) waiving the 14-day stay period; and (II) an Order, in a form to be submitted following the Sale ("Approval Order"): (a) approving the sale of the Property; and (b) granting such other, further and different relief as this Court deems just and proper, and respectfully represents as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought in this Motion include 11 U.S.C. §§ 105 and 363 ("Bankruptcy Code"), Rules 2002, 6004(h) and 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), Local Bankruptcy Rule 6004-1, and Administrative Order No. 557 adopting the guidelines for the conduct of asset sales under section 363(b) of the Bankruptcy Code ("Order No. 557").

**BACKGROUND**

4.      On October 19, 2023 ("Filing Date"), a voluntary petition under Chapter 7 of the Bankruptcy Code was filed on the Debtor's behalf in the United States Bankruptcy Court for the Eastern District of New York ("Court").

5.      Lori Lapin Jones is the Chapter 7 Trustee of the Debtor's estate.

6.      Public records reflect that, as of the Filing Date, the Debtor was the fee owner of the Property. The Property consists of an approximately 59,231 square foot apartment building that is currently partially occupied with tenants.

7.       Public records reflect that, on or about August 8, 2018, the Lender made a loan ("Loan") to the Debtor in the principal sum of eight million seven hundred and fifty thousand dollars ($8,750,000), which Loan is evidenced by a mortgage note dated as of August 8, 2018 ("Note"). To secure its obligations under the Note, the Debtor, as mortgagor, delivered to the Lender, as mortgagee, a mortgage dated as of August 8, 2018 ("Mortgage"), which Mortgage was recorded with the New York City Register ("Register"). In connection with the Note and Mortgage, the Debtor executed an Assignment of Leases and Rents dated as of August 8, 2018 ("ALR"), which ALR was recorded with the Register, and pursuant to which the Debtor assigned all its leases and rents to the Lender. The Loan matured on September 1, 2020.

8.       By complaint dated April 15, 2021, the Lender commenced an action in the Supreme Court of the State of New York, County of Queens ("State Court") against, among others, the Debtor to foreclose its mortgage on the Property ("Foreclosure Action"), which action was assigned index no. 7090578/2021. The Debtor defaulted in the Foreclosure Action.

9.       On May 18, 2022, the State Court entered an Order of Reference and Default Judgment in the Foreclosure Action pursuant to which, inter alia, a referee was appointed to compute the amounts owed to the Lender. On September 30, 2022, the State Court entered an Order in the Foreclosure Action pursuant to which, inter alia, the Receiver was appointed and authorized to take charge and enter into the Property ("Receivership Order"), a copy of which is annexed hereto as **Exhibit E**.

10.      On June 26, 2023, the State Court entered an Order in the Foreclosure Action that, inter alia, confirmed the referee's report dated July 20, 2022, granted a judgment of foreclosure and sale, and denied a cross-motion of the Debtor and its principal to vacate their default and interpose a late answer. On July 26, 2023, a Notice of Appeal of the State Court's June 26, 2023

Order was filed on behalf of the Debtor and its principal in the Foreclosure Action.

11.     On August 15, 2023, the State Court entered a Judgment of Foreclosure and Sale ("JFS") in the Foreclosure Action, a copy of which is annexed hereto as **Exhibit F**. The JFS provides that Lender was owed $13,263,173.12 with interest at the rate in the Note from June 1, 2022, together with, inter alia, any advances as provided for in the Note and Mortgage for taxes, insurance, and any other charges to maintain the Property pending the sale of the Property. See id.

12.     On August 31, 2023, the Receiver filed a Notice of Sale of the Property with a sale date of October 20, 2023, i.e., the day after the Filing Date, which foreclosure sale was stayed by virtue of the Debtor's commencement of this Chapter 7 case.

13.     The Trustee intends to sell the Property in accordance with, inter alia, section 363 of the Bankruptcy Code.[1] The Trustee requires funds to maintain the Property pending the Sale, and the Trustee does not have any funds in the Debtor's estate.

14.     The Trustee and Lender recognize and agree that the proceeds from the Sale of the Property may be insufficient to satisfy the Mortgage held by Lender and all administrative costs and expenses associated with the Sale. The Trustee and Lender also recognize and agree that it is in the best interests of the estate, including the occupants of the Property, for the Receiver to remain in possession of the Property and to continue to take such actions, incur such expenses, and disburse such funds as the Receiver believes in his reasonable discretion are necessary, desirable and/or appropriate and consistent with the Receivership Order to preserve the Property, including to conduct emergency repairs, pending a closing on the Sale of the Property.

15.     The Trustee, Lender and Receiver have negotiated and entered into the Stipulation,

---

[1]     By separate application, and consistent with paragraph 10 of the Stipulation, the Trustee will seek to employ MYC & Associates, Inc. as her real estate broker to market and sell the Property ("Broker").

4

which, among other things, provides for the continuance of the receivership, the use of cash generated from the Property, the advance of cash by Lender to preserve and maintain the Property, and a carve-out for the estate from the proceeds on account of the claim of Lender. See generally **Exhibit B**.

16.    The salient terms of the Stipulation[2] are as follows:[3]

a.    Absent further Order of this Court and subject to the turnover and reporting terms and conditions set forth in paragraph 4 of the Stipulation: (i) the Receiver shall be excused from the turnover and reporting requirements set forth in sections 543(a) and (b) of the Bankruptcy Code; (ii) the Receiver shall have the rights, powers, authority, and responsibilities set forth in the Receivership Order; and (iii) the Receiver may not petition the State Court to modify his rights, powers, authority, and responsibilities except on notice to the U.S. Trustee, the Trustee and Lender, with a copy of such notice and request for relief of the State Court to be filed by the Receiver in this Court. Absent an issue of safety, the Receiver shall not incur out of the ordinary course expenses without approval of the Court. See **Exhibit B** at 4, ¶2.

b.    Any and all compensation of the Receiver and his professionals shall be the sole responsibility of the Lender. See id. at 5, ¶6.

c.    The Trustee shall not be liable for the management and/or operation of the Property including, but not limited to, the Receiver's actions or inactions with respect to the Property. See id. at 5, ¶7.

d.    Lender shall advance cash to the Trustee (on behalf of the Debtor's estate) pursuant to and on the same terms as the Mortgage and Note ("Cash Advances") for the maintenance and payment of liability insurance relating to the Property in which the Trustee is the named insured. The Trustee shall request that Lender and the Receiver be named as additional insureds on any such policy. Lender shall continue to maintain and pay for property insurance on the Property until the earlier of the closing on the 363 Sale of the Property or the effective date of the Trustee's abandonment of the Property. See id. at 5-6, ¶8.

---

[2]    Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Stipulation.

[3]    This is intended to provide a summary of the terms of the Stipulation only, and is not intended to capture every term  or the precise language of the Stipulation.  If the Stipulation is approved by the Court, it is the terms of the Stipulation  that will control so all parties are encouraged to read the actual Stipulation and not to rely on the summary contained  herein.

e.    Lender consents to the 363 Sale of the Property by the Trustee. <u>See</u> <u>id.</u> at 6, ¶9.

f.    Lender shall have an allowed claim in the amount of $16,631,612.75 as of March 31, 2024, plus any Cash Advances made to the Debtor's estate ("<u>Allowed Secured Claim</u>"). <u>See</u> <u>id.</u> at 6, ¶11.

g.    Lender agrees that, if the Trustee sells the Property to a third party, the Trustee (on behalf of the Debtor's estate) shall retain a carve-out of funds from the proceeds of the sale of the Property and the Mortgage ("<u>Third-Party Sale Carve-Out</u>") sufficient and necessary to pay:

(i) in the event the gross sales price is $11,400,001 or more: 1. any and all liens on the Property that are of higher priority than the Mortgage including, but not limited to, any and all outstanding real estate and school taxes, water and sewer liens, or other liens; 2. any reasonable, customary closing costs and/or fees required to be paid by the estate at or in connection with the closing on the sale of the Property; 3. federal, state, city and/or any other taxes for which the estate may be liable (if any); 4. the sum of $273,000 for: (a) the Trustee's commission and out-of-pocket expenses (which commission and expenses shall be subject to separate Order of the Court); (b) the fees and expenses of the Trustee's retained attorneys (which fees and expenses shall be subject to separate Order of the Court); and (c) the fees and expenses of the Trustee's retained accountants (which fees and expenses shall be subject to separate Order of the Court); 5. the sum of 4% of the gross sales price for the Broker's commission (which commission shall be in the form of a buyer's premium, shall be inclusive of the Broker's out-of-pocket expenses, and shall be subject to separate Order of the Court); 6. all other allowed Chapter 7 administrative expense claims including, but not limited to, operating expenses relating to the Property; and 7. the sum of $35,000 for payment of allowed claims in accordance with the Bankruptcy Code; or

(ii) in the event the gross sales price is $11,400,000 or less: 1. any and all liens on the Property that are of higher priority than the Mortgage including, but not limited to, any and all outstanding real estate and school taxes, water and sewer liens, or other liens; 2. any reasonable, customary closing costs and/or fees required to be paid by the estate at or in connection with the closing on the sale of the Property; 3. federal, state, city and/or any other taxes for which the estate may be liable (if any); 4. the sum of $248,000 for: (a) the Trustee's commission and out-of-pocket expenses (which commission and expenses shall be subject to separate Order of the Court); (b) the fees and expenses of the Trustee's retained attorneys (which fees and expenses shall be subject to separate Order of the Court); and (c) the fees and expenses of the Trustee's retained accountants (which fees and expenses shall be subject to separate

Order of the Court); 5. the sum of 4% of the gross sales price for the Broker's commission (which commission shall be in the form of a buyer's premium, shall be inclusive of the Broker's out-of-pocket expenses, and shall be subject to separate Order of the Court); 6. all other allowed Chapter 7 administrative expense claims including, but not limited to, operating expenses relating to the Property; and 7. the sum of $25,000 for payment of allowed claims in accordance with the Bankruptcy Code.

See id. at 6-7, ¶12.

h.     In the event the Trustee does accept or receive an offer from a third party to purchase the Property, Lender shall credit bid for the Property. Pursuant to section 363(k) of the Bankruptcy Code, Lender may credit bid up to the amount of the Allowed Secured Claim. See id. at 7, ¶14.

i.     In the event that Lender is the successful bidder for the Property, then Lender, its designee or assignee shall, in exchange for the delivery of a Trustee's Deed for the Property tender to the Trustee sums sufficient and necessary to pay ("Lender Sale Carve-Out"): (i) any and all liens on the Property that are of higher priority than the Mortgage including, but not limited to, any and all outstanding real estate and school taxes, water and sewer liens, or other liens; (ii) any reasonable, customary closing costs and/or fees required to be paid by the estate at or in connection with the closing on the sale of the Property; (iii) federal, state, city and/or any other taxes for which the estate may be liable (if any); (iv) the sum of $130,000 for: 1. the Trustee's commission, but in an amount not less than $60,000, and out-of-pocket expenses (which commission and expenses shall be subject to separate Order of the Court); 2. the fees and expenses of the Trustee's retained attorneys (which fees and expenses shall be subject to separate Order of the Court); and 3. the fees and expenses of the Trustee's retained accountants (which fees and expenses shall be subject to separate Order of the Court); (v) the sum of $75,000 for the Broker's commission, and out-of-pocket expenses not to exceed $30,000 (which commission and expenses shall be subject to separate Order of the Court); (vi) all other allowed Chapter 7 administrative expense claims including, but not limited to, operating expenses relating to the Property; and (vii) the sum of $20,000 for payment of allowed claims in accordance with the Bankruptcy Code.

See id. at 7-8, ¶14.

## RELIEF REQUESTED AND BASIS FOR RELIEF

17.     By this Motion, the Trustee seeks, inter alia, entry of the Authorization Order (**Exhibit A** hereto): (a) approving the Stipulation (**Exhibit B** hereto); (b) authorizing the sale of

the Property; (c) scheduling the Sale for Tuesday, June 25, 2024 at 10:30 a.m.; (d) approving the proposed Terms and Conditions of Sale to govern the Sale of the Property (**Exhibit C** hereto); (e) approving the form and manner of notice of the Sale (**Exhibit D** hereto); (f) scheduling a hearing to confirm the results of the Sale; and (g) waiving the 14-day stay period required under Bankruptcy Rule 6004(h).

18.     The sale of the Property is appropriate and necessary. The proposed Sale will ensure that the value of the Property is maximized and that the highest or best offer for the Property is received.

### A.     The Stipulation Should Be Approved

19.     The Stipulation contains several negotiated compromises by and among the Trustee, the Lender and the Receiver including, but not limited to: (a) an agreement respecting the scope and terms of the Receiver's continued management of the Property and source of compensation for the Receiver; (b) an agreement of the Lender for the use and advance of cash to preserve and maintain the Property pending the Sale; (c) the allowance of the Lender's Allowed Secured Claim; (d) an agreement over the Third-Party Sale Carve-Out; and (e) an agreement over the Lender Sale Carve-Out. The Trustee believes that, when taken as a whole, the compromises contained within the Stipulation are in the best interests of the Debtor's estate and creditors.

20.     Settlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate. See In re Dewey & Leboeuf L.L.P., 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012). Under Bankruptcy Rule 9019, the court has the authority to "approve a compromise or settlement." FED. R. BANKR. P. 9019(A). A court must determine that a settlement under Bankruptcy Rule 9019 is fair, equitable, and in the best interests of the estate before it may approve a settlement. See In re Drexel Burnham

Lambert Grp., Inc., 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (citing Protective Comm. for Indep. S'holders of TMT Trailer Ferry v. Anderson, 390 U.S. 414, 424 (1968)). See also Topwater Exclusive Fund III, L.L.C. v. SageCrest II, L.L.C. (In re Sagecrest II), Nos. 3:10cv978 (SRU), 3:10cv979 (SRU), 2011 WL 134893, at *8-9 (D. Conn. Jan. 14, 2011); Cousins v. Pereira (In re Cousins), No. 09 Civ. 1190(RJS), 2010 WL 5298172, at *3 (S.D.N.Y. Dec. 22, 2010); In re Chemtura Corp., 439 B.R. 561, 593–94 (Bankr. S.D.N.Y. 2010); In re Lehman Bros. Holdings, Inc., 435 B.R. 122, 134 (S.D.N.Y. 2010). A court's responsibility is to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." Chemtura, 439 B.R. at 594 (quoting In re W.T. Grant, Co., 699 F.2d 599, 608 (2d Cir. 1983)) (internal quotations omitted). However, the court is not required to go so far as to conduct a trial on the terms to approve a settlement. Id. Rather, the court may rely upon the opinions of the trustee, the parties and their attorneys to evaluate the settlement and to make an independent judgment. See In re Adelphia Commc'ns. Corp., 368 B.R. 140, 225-26 (Bankr. S.D.N.Y. 2007).

21.    The court must inform itself of "all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." O'Connell v. Packles (In re Hilsen), 404 B.R. 58, 70 (Bankr. E.D.N.Y. 2009) (quoting TMT Trailer Ferry, 390 U.S. at 424) (internal quotations omitted). The United States Court of Appeals for the Second Circuit outlined the test for consideration of settlements under the Bankruptcy Rules in Motorola, Inc. v. Off. Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452, 462 (2d Cir. 2007). The factors to be considered are interrelated and require the court to evaluate:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the

> proposed settlement;" (4) whether other parties in interest support the settlement; (5) "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors;" and (7) "the extent to which the settlement is the product of arm's length bargaining."

Id. (internal citations omitted). The burden is on the settlement proponent to persuade the court that the settlement is in the best interests of the estate. See 8 NORTON BANKRUPTCY LAW AND PRACTICE 3D § 167:2 (3d ed. 2011). In this regard, the granting of releases in connection with a settlement of claims is left to the trustee's business judgment. See, e.g., Morley v. Ontos, Inc. (In re Ontos, Inc.), 478 F.3d 427, 433 (1st Cir. 2007) (affirming decision approving stipulation containing release of claims by trustee in connection with settlement of claims); Krohn v. Lawlor, 2007 U.S. Dist. LEXIS 66763, 2007 WL 2687663 (E.D.N.Y. Sept. 10, 2007) (approving settlement agreement in which the trustee granted releases).

22.    Section 543(d)(1) of the Bankruptcy Code contemplates an exception to the requirement that a prepetition custodian deliver to a trustee any estate property in his, hers, or its possession upon commencement of a bankruptcy case:

> After notice and a hearing, the bankruptcy court-
>
> > may excuse compliance with subsection (a), (b), or (c) of this section if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in the possession, custody, or control of such property[.]

11 U.S.C. § 543(d)(1).

23.    A trustee may be authorized pursuant to court order to use cash collateral in the ordinary course of business operations under, inter alia, sections 363(c) of the Bankruptcy Code. See 11 U.S.C. §363(c). Pursuant to section 363(e) of the Bankruptcy Code, the Court may condition such use as is necessary to provide adequate protection of any interest held therein by

any entity other than the debtor. <u>See</u> 11 U.S.C. §363(e). Courts repeatedly have recognized that use of cash collateral is appropriate where necessary to preserve an estate and maximize the value of an estate for all interested parties. <u>See</u>, <u>e.g.</u>, <u>In re Croton River Club</u>, 162 B.R. 656 (Bankr. S.D.N.Y. 1993); <u>In re Nightlife Enters., L.P.</u>, No. 10 B 10956(ALG), 2010 Bankr. LEXIS 4889 (Bankr. S.D.N.Y. Apr. 14, 2010). Bankruptcy Rule 4001(b) governs authorization for utilizing cash collateral and provides that the court may permit a trustee to use cash collateral. A trustee may not use cash collateral unless "(A) each entity that has an interest in such collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. §363(c)(2).

24.    Following consultation with her professionals, the Trustee determined that the sale of the Property may not generate sufficient proceeds to pay the Lender's claim, any outstanding real estate taxes, any outstanding water and sewer charges, and other administrative expenses of the estate. The Trustee also considered that there are no funds in the estate and that cash would be required to preserve and maintain the Property pending any sale. The Trustee further considered that, to operate and maintain the Property pending any sale, she would likely need to retain a managing agent to perform all of the duties that the Receiver has already been performing for several years pursuant to the Receivership Order.

25.    The Trustee determined in her reasonable business judgment that she had two options – either abandon the Property or come to an agreement with the Lender and the Receiver. The Stipulation accomplishes the latter, and will create a separate pot for the payment of allowed claims in accordance with the Bankruptcy Code whether the Lender or a third party is the ultimate purchaser the Property. Alternatively, the Trustee would have to abandon the estate's interest in the Property, thereby losing any chance of making a distribution to creditors and leaving the Property

with tenants back in limbo. Based on all of the above, the Trustee determined that it is in the best interests of the estate to enter into the Stipulation.

26.     The Trustee and the Lender are each represented by separate counsel, and the Receiver is an attorney. All negotiations were conducted at arm's-length.

27.     As a result of all of the above, the Trustee exercised her best business judgment to enter into the Stipulation.

**B.**     **The Sale Of The Property Should Be Authorized And Scheduled**

28.     The Property appears to be the Debtor's only asset in this Chapter 7 case. As set forth above, it is in the best interests of the Debtor's estate and all of its creditors for the Property to be sold.

29.     The Trustee proposes to conduct the Sale by Zoom (or another virtual platform) on Tuesday, June 25, 2024 at 10:30 a.m. (Eastern), or such other later date and time designated by the Trustee. Only parties that have delivered a required $500,000 deposit and executed Terms and Conditions of Sale to the Trustee by 5:00 p.m. (Eastern) on Monday, June 24, 2024, and Lender will be entitled to participate in the Sale. At or prior to the Sale, the Trustee will determine the opening bid. Qualified bidders and the Lender may make competing bids to purchase the Property. The Sale shall continue until there is only one offer that the Trustee determines is the highest or otherwise best offer for the Property.

30.     Upon entry of the Authorization Order, it is anticipated that the Broker will engage in a marketing plan, which will include, inter alia: (a) listing the Sale on appropriate websites; (b) soliciting bidders by phone and email; (c) supervising inspections for interested parties; (d) advertising the Sale in appropriate publications; and (e) distributing electronic flyers and

marketing materials.[4] The Trustee submits that the proposed June 25, 2024 sale date will provide sufficient time for the Broker to advertise the Sale to ensure that the highest or otherwise best offer for the Property is received.

31.      The Trustee submits that the proposed Sale of the Property is in the best interests of the Debtor's estate and its creditors and should be approved and scheduled.

**C.      The Terms And Conditions Of Sale Should Be Approved**

32.      The proposed Terms and Conditions of Sale for the Property are annexed hereto as **Exhibit C**. The salient provisions of the proposed Terms and Conditions of Sale are as follows:

a.      The Sale will be conducted on Tuesday, June 25, 2024 at 10:30 a.m. (Eastern) by Zoom (or another virtual platform) (instructions to be provided separately in advance of the Sale). See id. at ¶2.

b.      The Lender may credit bid for the Property at the Sale pursuant to section 363(k) of the Bankruptcy Code. The Lender: (a) shall in all events be deemed a qualified bidder at the Sale and be permitted to bid at the Sale; (b) shall not be required to pay a Qualifying Deposit (as defined in ¶7 of the Terms and Conditions of Sale) or any other Deposit (as defined in ¶10 of the Terms and Conditions of Sale) of any kind whatsoever, and (c) shall not be required to pay a Buyer's Premium (as defined in ¶10 of the Terms and Conditions of Sale). See id. at ¶6.

c.      To register for the Sale and bid on the Property, on or before 5:00 p.m. on Monday, June 24, 2024, each prospective bidder (other than the Lender) must deliver to the Trustee: (a) a certified or bank check drawn on an account of such bidder and payable to "Lori Lapin Jones, as Trustee" in the amount of five hundred thousand dollars ($500,000) ("Qualifying Deposit"), which amount shall serve as a good faith deposit against payment of the purchase price for the Property; and (b) the Terms and Conditions of Sale, executed by such prospective bidder. The Trustee reserves the right to reject any bidder (other than the Lender) who, in the sole discretion of the Trustee, the Trustee believes is not financially capable of consummating the purchase of the Property. See id. at ¶7.

d.      At the conclusion of the Sale, the first highest bidder ("Highest Bidder") and the second highest bidder ("Second Highest Bidder") for the Property must also execute, and thereby agree to be bound by, a Memorandum of

---

[4]      The Trustee reserves the right to separately seek approval of the terms of a stalking horse offer for the Property.

Sale. <u>See</u> <u>id</u>. at ¶8.

e.    The Highest Bidder or, as applicable, the Second Highest Bidder (other than the Lender) shall be solely responsible to pay the Trustee's retained broker, MYC & Associates, Inc., four (4%) percent of the amount bid by the Highest Bidder or, as applicable, the Second Highest Bidder at the Sale (such percentage amount being the "<u>Buyer's Premium</u>"). The sum of the amount bid at the Sale and the Buyer's Premium is defined therein as the "<u>Purchase Price</u>". <u>See</u> <u>id</u>. at ¶10.

f.    **<u>By 5:00 p.m. on Wednesday, June 26, 2024</u>**, the Highest Bidder (other than the Lender) shall deliver to the Trustee, by certified check, bank check, or wire transfer an amount equal to 10% of the Purchase Price <u>minus</u> the amount of the Qualifying Deposit, as and for a good faith deposit (such amount, plus the Qualifying Deposit, hereinafter "<u>Deposit</u>"). <u>See</u> <u>id</u>. at ¶11.

g.    The Highest Bidder (other than the Lender) must pay the balance of the Purchase Price to the Trustee, by wire transfer at the closing of title to the Property ("<u>Closing</u>"). <u>See</u> <u>id</u>. at ¶12.

h.    The Highest Bidder must close title to the Property on or before **<u>3:00 p.m. on Tuesday, July 23, 2024</u>** ("<u>Closing Date</u>"), **TIME BEING OF THE ESSENCE as to the Highest Bidder**, although such date may be extended solely by the Trustee. The Closing shall take place on or before the Closing Date at the offices of the attorneys for the Trustee, LaMonica Herbst & Maniscalco LLP, 3305 Jerusalem Avenue, Wantagh, New York 11793 or by mail, as elected by the Trustee. <u>See</u> <u>id</u>. at ¶13.

i.    Real estate taxes, water and sewer charges, and rent/use and occupancy (only to the extent actually received by or on behalf of the Debtor's estate) will be apportioned as of 12:00 a.m. on the Closing Date. There will be no other apportionments pertaining to the Property. <u>See</u> <u>id</u>. at ¶14.

j.    The Highest Bidder shall pay, on the Closing Date, any and all city, county, state or other transfer taxes incurred by or in connection with the transfer of the Property. <u>See</u> <u>id</u>. at ¶15.

k.    The Property is being sold:

    i.    "**AS IS**" "**WHERE IS**", "**WITH ALL FAULTS,**" without any representations, covenants, guarantees or warranties of any kind or nature whatsoever;

    ii.    free and clear of any and all monetary interests of whatever kind or nature including, but not limited to, liens, claims, encumbrances, monetary fines or penalties for violations, judgments and/or mortgages (collectively, "<u>Interests</u>"), with such Interests, if any, to

attach to the proceeds of sale in such order and priority as they existed immediately prior to the entry of the Order for Relief against the Debtor; and

iii.     subject to, among other things:

1.     any occupancies and/or tenancies;

2.     any state of facts that an accurate survey may show;

3.     any state of facts a physical inspection may show;

4.     any covenants, restrictions and easements of record;

5.     any building or zoning ordinances or other applicable municipal regulations and violations thereof;

6.     environmental conditions; and

7.     the conditions giving rise to any and all non-monetary violations existing on the Property as of the Closing Date. See id. at ¶19.

33.     The proposed Terms and Conditions of Sale also require bidders to disclose any connections to the Debtor, the Debtor's member (Vincent Garofalo), the Lender, the Trustee and/or the Trustee's professionals. See **Exhibit C** at ¶31.

34.     The Trustee submits in her reasonable business judgment that the proposed Terms and Conditions of Sale are designed to ensure that the Debtor's estate receives the maximum benefit from the sale of the Property on a reasonable timetable given the circumstances of this case and therefore warrant Court approval.

### D.     The Notice Of Sale Should Be Approved

35.     Pursuant to Bankruptcy Rules 2002(c) and 6004(a), the Trustee is required to give twenty-one (21) days' notice of any proposed sale of property not in the ordinary course of business to the Debtor and all creditors. See FED. R. BANKR. P. 2002(c) and 6004(a). Bankruptcy Rule 2002(c) provides that such notice must include the time and place of any auction, a sale hearing, and the time fixed for objections to the sale. See FED. R. BANKR. P. 2002(c).

15

36. Here, the Notice of Sale, substantially in the form annexed hereto as **Exhibit D**, will be served in accordance with Bankruptcy Rule 2002(c) at least twenty-one (21) days prior to the Sale. As reflected in the Notice of Sale, it includes: (a) the date, time and location of the Sale; (b) the Terms and Conditions of the Sale; and (c) a reasonably specific description of the Property.

37. The Trustee submits that the Notice of Sale as proposed complies with Bankruptcy Rule 2002 and Order No. 557, and constitutes good and adequate notice of the Sale. Therefore, the Trustee respectfully requests that the Court approve the proposed Notice of Sale.

### E.    The Sale Approval Hearing Should Be Scheduled

38. The Trustee proposes that, following the Sale, an affirmation to confirm the results of the sale will be submitted to the Court along with the proposed Approval Order authorizing and approving, inter alia, the Trustee's sale of the Property to the successful bidder from the Sale. Subject to Court availability, the Trustee proposes that the hearing be conducted on June 27, 2024 ("Sale Approval Hearing").

### F.    The 14-Day Stay Period Should Be Waived

39. Pursuant to Bankruptcy Rule 6004(h), all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen (14) days after entry of the order, unless otherwise ordered by the Court. FED. R. BANKR. P. 6004(h). The stay period is intended to provide sufficient time for an objecting party to appeal before the order is implemented. See Advisory Committee Notes to FED. R. BANKR. P. 6004(h).

40. Although little guidance is provided by either Bankruptcy Rule 6004(h) or the Advisory Committee Notes as to when a court should "order otherwise", it has been suggested that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." See 10 COLLIER ON

BANKRUPTCY § 6004.09 (Lawrence P. King, et al. eds, 15th ed. rev. rel. 2003). If an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek a stay pending such appeal. Id.

41.    Here, the Trustee respectfully requests that the Court waive the 14-day stay period required under Bankruptcy Rule 6004(h). This relief is both necessary and appropriate under the circumstances of this case. Indeed, in the event the Motion is approved, the Trustee intends to commence advertising the Sale.

## II.    The Approval Order Should Be Entered

42.    By this Motion, the Trustee also seeks entry of the Approval Order following the Sale Approval Hearing. As set forth above, the Trustee intends to submit an affirmation confirming the results of the Sale and the proposed Approval Order prior to the Sale Approval Hearing.

### A.    The Sale Of The Property Represents A Reasonable Exercise Of The Trustee's Business Judgment And Should Be Approved

43.    Pursuant to section 704(a) of the Bankruptcy Code, Chapter 7 trustees are required to "reduce to money the property of the estate for which such trustee serves." 11 U.S.C. § 704(a)(1). Under Bankruptcy Rule 6004(f)(1), a trustee is permitted to sell property of the estate pursuant to section 363(b) of the Bankruptcy Code by private sale or public auction. FED. R. BANKR. P. 6004(f)(1). Section 363(b) of the Bankruptcy Code and Bankruptcy Rule 6004 govern the sale of assets outside of the ordinary course of a debtor's business. Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).

44.    Order No. 557 supplements the requirements of section 363 of the Bankruptcy Code and provides, in pertinent part, that:

> When an auction is contemplated in cases filed under chapter 11 and where appropriate under other chapters, the [trustee] should ordinarily file a single motion seeking the entry of two orders to be considered at two separate hearings. The first order [. . .] will approve procedures for the sale process, including any protections for an initial, or stalking horse bidder ("stalking horse"), and the second order [. . .] will approve the sale to the successful bidder at the auction.

See Order No. 557 at 2.

45.     The Trustee is statutorily charged with liquidating property of the Debtor's estate as expeditiously as is compatible with the best interests of the estate. See 11 U.S.C. § 704(a)(1). Here, the Trustee used her sound business judgment to determine that selling the Property outside the ordinary course of business and pursuant to the Stipulation is justified, necessary and appropriate. Given that the Debtor is in Chapter 7 and the Property is not necessary for any reorganization, the prudent course is to proceed with its sale. Indeed, compelling justifications exist to authorize the Sale as set forth herein.

46.     Based upon the foregoing, the Trustee submits that the proposed sale of the Property represents a reasonable exercise of the Trustee's business judgment and should be approved.

**B.      The Property Should Be Sold Free And Clear Of Any And All Monetary Interests Pursuant To Section 363(f) Of The Bankruptcy Code**

47.     The Trustee proposes that the Property be sold free and clear of any and all monetary interests of whatever kind or nature including, but not limited to, liens, claims, encumbrances, judgments and/or mortgages (collectively, "Interests"), with such Interests, if any, to attach to the proceeds of sale in such order and priority as they existed immediately prior to the commencement of the Debtor's bankruptcy case.

48.     Section 363 of the Bankruptcy Code permits a trustee to sell property free and clear of any interest in such property if: (a) applicable state law will permit the sale; (b) such entity

consents; (c) the price at which the assets is being sold exceeds the aggregate value of all liens on such property; (d) the interest is in bona fide dispute; or (e) the entity with an interest in the asset being sold could be compelled in a legal or equitable proceeding to accept a money satisfaction of its interest in and to the property. See 11 U.S.C. § 363(f).

49.     Several courts have held that notwithstanding the use of the term "interest" in the statutory language of section 363(f), such section grants bankruptcy courts the power to convey assets free and clear of claims. See, e.g., In re Trans World Airlines., Inc., 322 F.3d 283, 290 (3d Cir. 2003); In re Medical Software Solutions, 286 B.R. 431, 446 (Bankr. D. Utah 2002); In re TWA, No. 01-0056 (PJW), 2001 Bankr. LEXIS 723 at *13-14 (Bankr. D. Del. Mar. 27, 2001) ("Authorizing the sale [of debtor's assets] free and clear of . . . successor liability claims achieves the purpose of section 363 [of the Bankruptcy Code] intended by Congress."). Section 105(a) of the Bankruptcy Code provides additional support for court's authority to convey assets free and clear of claims. See In re White Motor Credit Corp., 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) (stating that the absence of specific authority to sell assets free and clear of claims poses no impediment to such sale, as such authority is implicit in the court's equitable powers when necessary to carry out the provisions of Title 11); see also Equity Broad. Corp. v. Shubert (In re Winstar Commc'ns, Inc.), 284 B.R. 40, 48 (Bankr. D. Del. 2002) (approving a sale order transferring the debtor's securities free and clear of all encumbrances pursuant to sections 105(a) and 363(f) of the Bankruptcy Code).

50.     By the Stipulation, the Lender -- who appears to be significantly under secured -- has consented to the sale of the Property and agreed to a carve-out for the benefit of the Debtor's estate. Furthermore, all known holders of Interests in the Property will be provided notice of the proposed Sale. Thus, all known holders of Interests in the Property will have an opportunity to

oppose the proposed sale of the Property pursuant to section 363(f) of the Bankruptcy Code and to be heard at the hearing.

51.    Based on the foregoing, the requirements of section 363(f) of the Bankruptcy Code are satisfied, and the Property may be sold free and clear of any and all Interests.

### C.    The Successful Bidder Should Be Afforded Protection Under Section 363(m) Of The Bankruptcy Code

52.    Section 363(m) of the Bankruptcy Code affords protection to a good faith purchaser in any interest in property purchased from an estate, whether the sale conducted is later reversed or modified on appeal. Specifically, section 363(m) provides as follows:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m); see also Allstate Ins. Co. v. Hughes, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal."); In re Stein & Day, Inc., 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal").

53.    The United States Court of Appeals for the Second Circuit has held that a party would have to show fraud or collusion between a buyer and the debtor-in-possession or trustee in order to demonstrate a lack of good faith. See Kabro Assocs., L.L.C. v. Colony Hill Assocs. (In re Colony Hill Assocs.), 111 F.3d 269, 276 (2d Cir. 1997) (citations omitted) ("[t]ypically the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the Trustee, or an attempt to take grossly

unfair advantage of other bidders."); see also In re Bakalis, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998).

54.    Here, the Trustee intends to conduct the Sale of the Property. The Trustee anticipates that, following the Sale, she will seek to confirm the sale to the highest or best bidder. The Trustee anticipates that such bidder for the Property will be acting in good faith since the Sale will be conducted at arm's-length with an opportunity for competitive bidding.

55.    Accordingly, it is anticipated that the Approval Order will afford the successful bidder at the Sale (including Lender) the protections available under section 363(m) of the Bankruptcy Code.

56.    Pursuant to Order No. 557, the Trustee is required to highlight any "extraordinary provisions" in a separate section of a motion seeking to sell estate assets. The Trustee submits that there are no "extraordinary provisions" with respect to the proposed Sale that have not otherwise been highlighted herein.

## NOTICE AND NO PRIOR REQUEST

57.    By separate application, the Trustee will seek entry of an Order scheduling a hearing on shortened and limited notice of the Motion. Notice of the proposed Sale will be provided in accordance with Bankruptcy Rule 2002(a)(2).

58.    No previous request for the relief sought herein has been made by the Trustee to this or any other Court.

**WHEREFORE** the Trustee respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: April 29, 2024
   Wantagh, New York      **LaMONICA HERBST & MANISCALCO, LLP**
                *Counsel to Lori Lapin Jones, as Chapter 7 Trustee*

        By:   <u>*s/ Holly R. Holecek*</u>
            Holly R. Holecek, Esq.
            Gary F. Herbst, Esq.
            3305 Jerusalem Avenue, Suite 201
            Wantagh, New York 11793
            Telephone: (516) 826-6500