# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re:                                                          Chapter 7

143-30 SANFORD AVE LLC,                          Case No.: 23-43812-nhl

                        Debtor.
--------------------------------------------------------x

**STIPULATION PROVIDING FOR: (I) CONTINUANCE OF RECEIVERSHIP; (II) USE OF CASH; (III) ADVANCES TO BE MADE BY SANFORD FUNDING LLC; AND (IV) A CARVE-OUT FROM THE CLAIM OF SANFORD FUNDING LLC IN CONNECTION WITH THE SALE OF THE REAL PROPERTY LOCATED AT 143-30 SANFORD AVENUE, FLUSHING, NEW YORK 11355**

This Stipulation is made as of April 19 2024 by and between Lori Lapin Jones, solely in her capacity as Chapter 7 Trustee ("Trustee") of the Estate of 143-30 Sanford Ave LLC ("Debtor"), Sanford Funding LLC ("Lender"), and Gerard A. Geisweller, Esq. ("Receiver") (the Trustee, Lender and Receiver are each a "Party" and collectively are "Parties").

## RECITALS

WHEREAS, on October 19, 2023 ("Filing Date"), a voluntary petition under Chapter 7 of title 11 of the United States Code ("Bankruptcy Code") was filed on the Debtor's behalf in the United States Bankruptcy Court for the Eastern District of New York ("Court");

WHEREAS, Lori Lapin Jones is the Chapter 7 Trustee of the Debtor's estate;

WHEREAS, public records reflect that, as of the Filing Date, the Debtor was the fee owner of the real property and improvements known as and located at 143-30 Sanford Avenue, Flushing, New York 11355 ("Property");

WHEREAS, the Property consists of an approximately 59,231 square foot apartment building that is currently partially occupied with tenants;

WHEREAS, on or about August 8, 2018, Lender made a loan ("Loan") to the Debtor in the

1

principal sum of eight million seven hundred and fifty thousand dollars ($8,750,000), which Loan is evidenced by a mortgage note dated as of August 8, 2018 ("Note");

WHEREAS, to secure its obligations under the Note, the Debtor, as mortgagor, delivered to Lender, as mortgagee, a mortgage dated as of August 8, 2018 ("Mortgage"), which Mortgage was recorded with the New York City Register ("Register");

WHEREAS, in connection with the Note and Mortgage, the Debtor executed an Assignment of Leases and Rents dated as of August 8, 2018 ("ALR"), which ALR was recorded with the Register, and pursuant to which the Debtor assigned all its leases and rents to Lender;

WHEREAS, the Loan matured on September 1, 2020;

WHEREAS, by complaint dated April 15, 2021, Lender commenced an action in the Supreme Court of the State of New York, County of Queens ("State Court") against, among others, the Debtor to foreclose its mortgage on the Property ("Foreclosure Action"), which action was assigned index no. 7090578/2021;

WHEREAS, the Debtor defaulted in the Foreclosure Action;

WHEREAS, on May 18, 2022, the State Court entered an Order of Reference and Default Judgment in the Foreclosure Action pursuant to which, inter alia, a referee was appointed to compute the amounts owed to Lender;

WHEREAS, on September 30, 2022, the State Court entered an Order in the Foreclosure Action pursuant to which, inter alia, the Receiver was appointed and authorized to take charge and enter into the Property ("Receivership Order");

WHEREAS, on June 26, 2023, the State Court entered an Order in the Foreclosure Action that, inter alia, confirmed the referee's report dated July 20, 2022, granted a judgment of foreclosure and sale, and denied a cross-motion of the Debtor and its principal to vacate their

2

default and interpose a late answer;

WHEREAS, on July 26, 2023, a Notice of Appeal of the State Court's June 26, 2023 Order was filed on behalf of the Debtor and its principal in the Foreclosure Action;

WHEREAS, on August 15, 2023, the State Court entered a Judgment of Foreclosure and Sale ("JFS") in the Foreclosure Action;

WHEREAS, the JFS provides that Lender was owed $13,263,173.12 with interest at the rate in the Note from June 1, 2022, together with, inter alia, any advances as provided for in the Note and Mortgage for taxes, insurance, and any other charges to maintain the Property pending the sale of the Property;

WHEREAS, on August 31, 2023, the Receiver filed a Notice of Sale of the Property with a sale date of October 20, 2023, i.e., the day after the Filing Date, which foreclosure sale was stayed by virtue of the Debtor's commencement of this Chapter 7 case;

WHEREAS, the Trustee intends to sell the Property in accordance with, inter alia, section 363 of the Bankruptcy Code and subject to further Order(s) of the Court ("363 Sale");

WHEREAS, the Trustee and Lender recognize and agree that the proceeds from the 363 Sale of the Property may be insufficient to satisfy the Mortgage held by Lender and all administrative costs and expenses associated with the 363 Sale;

WHEREAS, the Trustee has determined that funds are required to maintain the Property pending its sale, and the Trustee does not have any funds in the Debtor's estate;

WHEREAS, the Trustee and Lender recognize and agree that it is in the best interests of the estate, including the occupants of the Property, for the Receiver to remain in possession of the Property and to continue to take such actions, incur such expenses, and disburse funds as the Receiver believes in his reasonable discretion are necessary, desirable and/or appropriate and

consistent with the Receivership Order to preserve the Property, including to conduct emergency repairs, pending a closing on the sale of the Property; and

WHEREAS, the Trustee, Lender and Receiver, through their respective counsel, have negotiated and entered into this Stipulation and Order ("Stipulation"), which, among other things, provides for the continuance of the receivership to the extent set forth herein, the use of cash generated from the Property, advances to be made by Lender, and a carve-out from the proceeds on account of the claim of Lender.

NOW, THEREFORE, in consideration of the foregoing, it is hereby stipulated and agreed by and between the Trustee, Lender and the Receiver (collectively, "Parties" and each a "Party") as follows:

1.      This Stipulation is contingent upon: (a) approval of the Court; and (b) the funding by the Lender to the Trustee of sufficient funds to pay for liability insurance. Should the Court decline to approve the Stipulation, this Stipulation shall have no force or effect.

## A.      The Continued Receivership

2.      Absent further Order of this Court and subject to the turnover and reporting terms and conditions set forth in paragraph 4 below: (a) the Receiver is excused from the turnover and reporting requirements set forth in sections 543(a) and (b) of the Bankruptcy Code; (b) the Receiver shall have the rights, powers, authority, and responsibilities set forth in the Receivership Order; and (c) the Receiver may not petition the State Court to modify his rights, powers, authority, and responsibilities except on notice to the U.S. Trustee, the Trustee and Lender, with a copy of such notice and request for relief of the State Court to be filed by the Receiver in this Court. Absent an issue of safety, the Receiver shall not incur out of the ordinary course expenses without approval of the Court.

3.      Lender consents to the use of funds generated from the Property for the operation and maintenance of the Property.

4.      By no later than the 10th day of each month, the Receiver shall provide the Trustee with detailed reporting of the cash receipts and disbursements relating to the Property for the preceding month including, but not limited to, copies of bank statements reflecting such cash receipts and disbursements. The Receiver shall also provide the U.S. Trustee, the Trustee, and Lender with information reasonably requested by them in writing within five (5) business days including, without limitation, the information required by section 543(b)(2) of the Bankruptcy Code and Rule 6002 of the Federal Rules of Civil Procedure.

5.      Promptly upon closing of any sale of the Property, the Receiver shall: (a) deliver to the purchaser thereof possession of the Property and any tenant security deposits under his custody and control; (b) deliver to the Trustee all non-security deposit funds that he is holding, which funds shall become property of the Debtor's estate free and clear of any liens of Lender; and (c) deliver to the purchaser possession of any tenant leases, future rents and rental arrears in or that come into his possession, custody, or control.

6.      Any and all compensation of the Receiver and his professionals shall be the sole responsibility of the Lender.

7.      The Trustee shall not be liable for the management and/or operation of the Property including, but not limited to, the Receiver's actions or inactions with respect to the Property.

**B.      The Maintenance and Sale of the Property**

8.      Lender shall advance cash to the Trustee (on behalf of the Debtor's estate) pursuant to and on the same terms as the Mortgage and Note ("Cash Advances") for the maintenance and payment of liability insurance relating to the Property in which the Trustee is the named insured.

The Trustee shall request that Lender and the Receiver be named as additional insureds on any such policy. Lender shall continue to maintain and pay for property insurance on the Property until the earlier of the closing on the 363 Sale of the Property or the effective date of the Trustee's abandonment of the Property.

9.      Lender consents to the 363 Sale of the Property by the Trustee.

10.     The Trustee shall seek entry of an Order of the Court retaining MYC & Associates, Inc. as real estate broker ("Broker") to market and sell the Property.

11.     Lender shall have an allowed claim in the amount of $16,631,612.75 as of March 31, 2024, plus any Cash Advances made to the Debtor's estate ("Allowed Secured Claim").

12.     Lender hereby agrees that, if the Trustee sells the Property to a third party, the Trustee (on behalf of the Debtor's estate) shall retain a carve-out of funds from the proceeds of the sale of the Property and the Mortgage ("Third-Party Sale Carve-Out") sufficient and necessary to pay:

      a.      in the event the gross sales price is $11,400,001 or more: (a) any and all liens on the Property that are of higher priority than the Mortgage including, but not limited to, any and all outstanding real estate and school taxes, water and sewer liens, or other liens; (b) any reasonable, customary closing costs and/or fees required to be paid by the estate at or in connection with the closing on the sale of the Property; (c) federal, state, city and/or any other taxes for which the estate may be liable (if any); (d) the sum of $273,000 for: (i) the Trustee's commission and out-of-pocket expenses (which commission and expenses shall be subject to separate Order of the Court); (ii) the fees and expenses of the Trustee's retained attorneys (which fees and expenses shall be subject to separate Order of the Court); and (iii) the fees and expenses of the Trustee's retained accountants (which fees and expenses shall be subject to separate Order of the Court); (e) the sum of 4% of the gross sales price for the Broker's commission (which commission shall be in the form of a buyer's premium, shall be inclusive of the Broker's out-of-pocket expenses, and shall be subject to separate Order of the Court); (f) all other allowed Chapter 7 administrative expense claims including, but not limited to, operating expenses relating to the Property; and (h) the sum of $35,000 for payment of allowed claims in accordance with the Bankruptcy Code; or

b.      in the event the gross sales price is $11,400,000 or less: (a) any and all liens on the Property that are of higher priority than the Mortgage including, but not limited to, any and all outstanding real estate and school taxes, water and sewer liens, or other liens; (b) any reasonable, customary closing costs and/or fees required to be paid by the estate at or in connection with the closing on the sale of the Property; (c) federal, state, city and/or any other taxes for which the estate may be liable (if any); (d) the sum of $248,000 for: (i) the Trustee's commission and out-of-pocket expenses (which commission and expenses shall be subject to separate Order of the Court); (ii) the fees and expenses of the Trustee's retained attorneys (which fees and expenses shall be subject to separate Order of the Court); and (iii) the fees and expenses of the Trustee's retained accountants (which fees and expenses shall be subject to separate Order of the Court); (e) the sum of 4% of the gross sales price for the Broker's commission (which commission shall be in the form of a buyer's premium, shall be inclusive of the Broker's out-of-pocket expenses, and shall be subject to separate Order of the Court); (f) all other allowed Chapter 7 administrative expense claims including, but not limited to, operating expenses relating to the Property; and (g) the sum of $25,000 for payment of allowed claims in accordance with the Bankruptcy Code.

To the extent portions of the Third-Party Sale Carve-Out are unliquidated, the Trustee and Lender will work in good faith to resolve any disputes and, to the extent they cannot resolve any such disputes, the Trustee shall seek Court intervention.

13.      In the event the Trustee does accept or receive an offer from a third party to purchase the Property, Lender shall credit bid for the Property. Pursuant to section 363(k) of the Bankruptcy Code, Lender may credit bid up to the amount of the Allowed Secured Claim.

14.      In the event that Lender is the successful bidder for the Property, then Lender, its designee or assignee shall, in exchange for the delivery of a Trustee's Deed for the Property tender to the Trustee sums sufficient and necessary to pay ("Lender Sale Carve-Out"):

(a) any and all liens on the Property that are of higher priority than the Mortgage including, but not limited to, any and all outstanding real estate and school taxes, water and sewer liens, or other liens; (b) any reasonable, customary closing costs and/or fees required to be paid by the estate at or in connection with the closing on the sale of the Property; (c) federal, state, city and/or any other taxes for which the estate may be liable (if any); (d) the sum of $130,000 for: (i) the Trustee's commission, but in an amount not less than $60,000, and out-of-pocket expenses (which commission and

7

expenses shall be subject to separate Order of the Court); (ii) the fees and expenses of the Trustee's retained attorneys (which fees and expenses shall be subject to separate Order of the Court); and (iii) the fees and expenses of the Trustee's retained accountants (which fees and expenses shall be subject to separate Order of the Court); (e) the sum of $75,000 for the Broker's commission, and out-of-pocket expenses not to exceed $30,000 (which commission and expenses shall be subject to separate Order of the Court); (f) all other allowed Chapter 7 administrative expense claims including, but not limited to, operating expenses relating to the Property; and (g) the sum of $20,000 for payment of allowed claims in accordance with the Bankruptcy Code.

15.     The Trustee shall be authorized to distribute, within five (5) business days of receipt of the sale proceeds and without further order of the Court, the remaining proceeds of sale of Property to Lender on account of, and in reduction of, the Allowed Secured Claim.

16.     In the event that the sale proceeds do not exceed the sums due to Lender on account of the Allowed Secured Claim (including the Third-Party Sale Carve-Out or, as applicable, Lender Sale Carve-Out) as contemplated in paragraphs 12 and 14 above, Lender waives any right to share in the Third-Party Sale Carve-Out or, as applicable, Lender Sale Carve-Out.

17.     Nothing contained herein is a waiver of any of the Trustee's or Lender's rights to contest or otherwise object to the claims of any junior lien holders or any other party asserting a claim or interest against Property or the proceeds of sale.

## C.     <u>Miscellaneous</u>

18.     This Stipulation shall be effective upon entry of an Order of the Court approving this Stipulation and that Order becoming final and non-appealable.

19.     This Stipulation may be executed in one or more counterparts, each of which shall be deemed an original and shall be binding on any party executing this Stipulation, all of which shall constitute one and the same document. Signatures delivered by electronic mail or facsimile shall have the same force and effect as those original signatures.

20.     This Stipulation shall be governed by and construed under applicable federal law and/or the laws of the State of New York.

21.     The Court shall retain jurisdiction to determine any dispute which may arise under the terms of this Stipulation.

22.     This Stipulation may not be amended or modified other than in writing executed by each of the Parties.

23.     This Stipulation sets forth the entire agreement between the Parties and fully supersedes any and all prior agreements and understandings, written or oral, between the Parties pertaining to the subject matter hereof.

24.     This Stipulation shall be binding upon the Parties, their respective heirs, executors, successors, administrators and assigns.

Dated: April 19 2024
       Wantagh, New York

                              **LaMONICA HERBST & MANISCALCO, LLP**
                              *Counsel to Lori Lapin Jones, as Chapter 7 Trustee*

By:     *[signature]*

                              Holly R. Holecek, Esq.
                              Gary F. Herbst, Esq.
                              3305 Jerusalem Avenue, Suite 201
                              Wantagh, New York 11793
                              Telephone: (516) 826-6500

Dated: April _____, 2024
    New York, New York

                   **GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP**
                   *Counsel to Sanford Funding LLC*

        By:    _____

                   Kevin J. Nash, Esq.
                   1501 Broadway, 22nd Floor
                   New York, New York 10036
                   Telephone: (212) 301-6944

Dated: April ___, 2024
    College Point, New York

                   **MATTONE, MATTONE, MATTONE LLP**
                   *Counsel to Gerard A. Geisweller, Esq.*

        By:    _____

                   Gerard A. Geisweller, Esq.
                   134-01 20th Avenue
                   College Point, New York 11356
                   Telephone: (718) 353-8880

Dated: April _____, 2024
New York, New York

**GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP**
*Counsel to Sanford Funding LLC*

By: _____
Kevin J. Nash, Esq.
1501 Broadway, 22nd Floor
New York, New York 10036
Telephone: (212) 301-6944

Dated: April 17, 2024
College Point, New York

**MATTONE, MATTONE, MATTONE LLP**
*Counsel to Gerard A. Geisweller, Esq.*

By: _____
Gerard A. Geisweller, Esq.
134-01 20th Avenue
College Point, New York 11356
Telephone: (718) 353-8880