UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---

In Re:

143-30 SANFORD AVE LLC,

        Debtor,

Case No. 23-43812-nhl
(Chapter 7)

---

### MEMORANDUM OF LAW IN SUPPORT OF DEBTOR'S ORDER TO SHOW CAUSE TO DISMISS THE CASE PURSUANT TO 11 U.S.C. § 707(a)

### FACTS RELEVANT TO THE INSTANT MOTION

The debtor, 143-30 Sanford Ave, LLC ("Debtor") is a New York State limited liability company formed on June 21, 2018. Attached hereto as **EXHIBIT A** is the Event Filing History printout from the New York Department of State Division of Corporations. The sole asset of the Debtor is the 80-Unit apartment building located at 143-30 Sanford Avenue, Flushing, NY 11355 (the "Premises"). The Debtor is owned entirely by Vincent Garofalo ("Garofalo").

On October 1, 2018 Debtor borrowed the sum of $8,750,000.00 from Sanford Funding LLC ("Creditor") through a hard money loan secured by the Premises. Such loan was to run from October 1, 2018 until August 1, 2020 and bore an interest rate of 7.99%. Under the terms of the loan Debtor was to pay monthly interest-only payments of $58,260.00. The Note required Debtor to pay Creditor default interest in the amount of 24% if certain enumerated events took place. Concurrent with the execution of the Note and Mortgage, Garofalo signed a personal guarantee making him personally liable for any moneys owed in connection with the loan. (Declaration of Vincent Garofalo ¶ 2).

1

On October 16, 2019 Creditor sent notice to Debtor that they were in default due to Debtor's alleged failure to provide proof that Debtor was up to date on their water/sewer charges and real estate taxes on the Premises. On January 6, 2020, Creditor accelerated all payments due and owing under the Note and Mortgage and began charging Debtor default interest at the rate of 24% retroactive to November 1, 2019.

Creditor initiated the foreclosure action by filing a summons and complaint and notice of pendency on April 15, 2021 in New York State Supreme Court, County of Queens. Such case is captioned <u>Sanford Funding, LLC. V. 143-30 Sanford Ave, LLC., Vincent Garofalo</u> *et al*, and bears the index number 709057/2021 (the "Foreclosure Action"). Such Complaint alleges that Debtor failed to comply with conditions of the mortgage requiring them to pay water/sewer charges on the Premise; provide copies of insurance policies with proof of payment; and failed to make the monthly mortgage payment due on December 1, 2019. Neither the Debtor nor co-defendant Garofalo filed an answer in the Foreclosure Action.

On June 24, 2021 Debtor and Creditor entered into a Forbearance Agreement in which Creditor agreed to forebear from continuing the within action in exchange for Debtor making a payment in the amount of $850,000.00. On or about June 24, 2021 Debtor made such payment to Creditor. From June 2021 until the end of 2021, Debtor paid Creditor $58,220.84 per month pursuant to the Forbearance Agreement.

On January 1, 2022 Creditor moved the court in the Foreclosure Action for a Default Judgment and Order of Reference. Such motion was granted on May 18, 2022 with no opposition from either the Debtor nor co-defendant Garofalo. On January 9, 2023 Creditor filed a motion seeking confirmation of the Referee's Report and granting Creditor Judgment of Foreclosure and Sale in the Foreclosure Action. The Supreme Court granted Creditor's motion and awarded

Creditor Judgment of Foreclosure and Sale in the amount of $13,263,173.12 on August 15, 2023. A copy of such judgment if attached hereto as **EXHIBIT B**.

**The Bankruptcy Filing**

On August 15, 2023 Creditor scheduled a foreclosure sale for the Premises for October 20, 2023 pursuant to the Judgment of Foreclosure and Sale. Attached hereto as **EXHIBIT C** is a copy of the Notice of Sale. On October 19, 2023 Garofalo, on behalf of Debtor, filed a "skeletal" Chapter 7 bankruptcy petition that stayed the foreclosure sale of the Premises that was scheduled for the next day. The bankruptcy petition consisted of the following documents:

1) Voluntary Petition (Chapter 7);
2) Verification of Creditor Matrix identifying Sanford Funding LLC as the sole creditor;
3) Statement Pursuant to Local Bankruptcy Rule 1073-2(b); and
4) Schedule A, identifying the Premises as the sole asset of the Debtor. (**ECF No. 1**).

The Debtor (an LLC) made the bankruptcy filing without being represented by an attorney. No other schedules or required documents were ever filed by Debtor; the Petition listed no unsecured creditors. Later in the day on October 19, 2023, the Clerk of the Bankruptcy Court filed a Notice of Deficient Filing that instructed Debtor to file the missing required forms. (**ECF No. 5**). Also on October 18, 2023 Lori Lapin Jones, Esq. was appointed Trustee ("Trustee"). On November 14, 2023 the Trustee filed with the Court an Application to Employ LaMonica Herbst & Maniscalco, LLP ("LaMonica") as Counsel to the Chapter 7 Trustee. (**ECF No. 7**). The Trustee's application sought approval for LaMonica to charge the following fees in connection with their proposed representation of the Trustee: $225.00 per hour for para-professionals; $475.00 per hour for associate attorneys; and $675.00 per hour for partners. (**ECF No. 7; ¶ 13**). The

3

Trustee's application to employ LaMonica was approved by the Court on May 10, 2024 (**ECF No. 12**). No 341 hearing was ever conducted. The United States Trustee never moved to dismiss this case pursuant to 11 U.S.C. § 707(a)(3).

**The Trustee Declines to Abandon the Premises**

Despite acknowledging that the Premises is likely "underwater,"[1] on April 29, 2024 the Trustee moved this Court for an Order approving a stipulation between the Creditor and the Trustee in which they agreed to allow the Trustee sell the Premises at public auction pursuant to section 363 of the Bankruptcy Code. (**ECF No. 9**). The docket reflects that on May 23, 2023 this Court granted the Trustee's motion and approved the stipulation to sell the Premises.

The next day, on April 24, 2024, the Trustee filed an Application to Employ MYC & Associates ("MYC") to serve as real estate broker to the Trustee. (**ECF No. 16**). MYC's proposed commission was 4% of the winning bid at auction is the Premises were to be sold to a 3rd party. If the lender were to reclaim the Premises, MYC would be entitled to $75,000.00 plus $30,000.00 for out-of-pocket expenses. (**ECF No. 16; ¶ 14**). On April 29, 2024 the Court approved the Trustee's motion to retain MYC as her real estate broker.

Initially, the auction was scheduled for July 25, 2025 (**ECF No. 20**) but was adjourned to August 8, 2024 (**ECF No. 24**). The Debtor's first appearance in this case, subsequent to the initial filing of the petition, was when the undersigned filed a Notice of Appearance on the behalf of the debtor on June 21, 2024 (**ECF No. 25**). During the period of time between the filing and the undersigned's appearance, the Creditor and the Trustee moved this Court for permission to sell the Premises. Such motion was unopposed by Debtor as it was unrepresented.

---

[1] ECF No. 9; ¶ 14.

## ARGUMENT

I. **THE COURT SHOULD GRANT DEBTOR'S MOTION TO STAY THE AUGUST 8, 2024 AUCTION AND GRANT DEBTOR'S MOTION TO DISMISS THIS CASE**

### A. THIS COURT HAS DISCRETION TO DISMISS THE CASE UNDER 11 U.S.C. § 707(A)

11 U.S.C. § 707(a) governs a debtor's motion to dismiss a voluntarily-filed petition. *See, e.g.*, Turpen v. Eide, 244 B.R. 431, 434 (B.A.P. 8th Cir. 2000); In re Schwartz, 58 B.R. 923, 925 (Bankr. S.D.N.Y. 1986); In re Klein, 39 B.R. 530, 532 (Bankr. E.D.N.Y. 1984). Under section 707(a), "the debtor has no absolute right to dismissal of a Chapter 7 case." Turpen, 244 B.R. at 434; *see also* In re Klein, 39 B.R. at 532. Rather, a debtor seeking dismissal must show "cause." 11 U.S.C. § 707(a); *see* Dinova v. Harris, 212 B.R. 437, 442 (B.A.P. 2d Cir. 1997). While the Bankruptcy Code does not define "cause," it is well established that the three examples given in section 707(a) are illustrative and not exclusive. *See* Neary v. Padilla, 222 F.3d 1184, 1191 (9th Cir. 2000); Dionne v. Simmons, 200 F.3d 738, 743 (11th Cir. 2000).

When a debtor moves for dismissal under 11 U.S.C. § 707(a) courts in this jurisdiction inquire whether cause exists by looking at "whether dismissal would be in the best interest of all parties in interest." Dinova v. Harris, 212 B.R. at 442; *see also* In re Schwartz, 58 B.R. at 925; In re Hull, 339 B.R. 304, 307 (Bankr. E.D.N.Y. 2006). The Second Circuit has sanctioned this analysis: "We agree that this is the appropriate analysis. The best interest of the debtor lies generally in securing an effective fresh start upon discharge and in the reduction of administrative expenses leaving him with resources to work out his debts. With regard to creditors, the issue is typically one of prejudice: creditors can be prejudiced if the motion to dismiss is brought after the passage of a considerable amount of time and they have been forestalled from collecting the amounts owed to them. A prejudicial delay also creates the appearance that such an abusive

practice is implicitly condoned by the Code." Smith v Geltzer, 507 F3d 64, 72-73 (2d Cir 2007)(internal citations omitted).

"Because the weighing of these factors is guided by equitable considerations, the determination of whether cause exists is committed to the sound discretion of the bankruptcy court. In re Hull, 339 B.R. at 308; *see also* 6 Collier on Bankruptcy § 707.03 (15th ed. rev. 2006) ("The court has substantial discretion in ruling on a motion to dismiss under section 707(a), and in exercising that discretion must consider any extenuating circumstances, as well as the interests of the various parties."). Id at 73.

### B. THE FACTORS ESTABLISHED BY THE SECOND CIRCUIT FAVOR DISMISSING THIS CASE

In Wilk Auslander LLP v Murray (In re Murray), 900 F3d 53 (2d Cir 2018)("Murray") the Second Circuit identified nine factors to be considered in determining if dismissal was proper under 11 U.S.C. § 707(a). Relevant to the present matter are the following factors that this Court should take into account in connection with this motion in applying the standards set forth in Murray: (1) the bankruptcy court was the most recent battlefield in a long-running, two-party dispute. . . ; (3) there were no competing creditors; (4) there was no need for *pari passu* distribution. . . ; (6) [the creditor] had adequate remedies to enforce its judgment under non-bankruptcy law. . . ; (8) no assets would be lost or dissipated in the event that the bankruptcy case did not continue; and (9) [the debtor] did not want or need a bankruptcy discharge. At 57-8. Applying these standards to the present case should cause this Court to conclude that cause is present sufficient to dismiss the case under 11 U.S.C. § 707(a).

6

*1. This Bankruptcy Proceeding is the Result of a Two-Party Dispute*

As discussed *Supra*, this bankruptcy has only two parties, the Debtor and Creditor who are defendant and plaintiff in the Foreclosure Action in Queens Supreme Court that was filed in April of 2021. There are no other secured creditors, lienholders, unsecured creditors, co-debtors, or any other party that has an interest in the Premises. No other creditor with a competing interest is present in this case. Accordingly, there is no need for *pari-passu* distribution of any assets from the bankruptcy estate.

The Bankruptcy Court is simply the most recent forum in which the parties have litigated the Foreclosure Action. No other creditor's rights will be compromised or affected if the case is dismissed.

*2. Creditor Has Adequate Remedies Under State Law to Enforce its Judgment*

As discussed *Supra*, the Queens Supreme Court awarded Creditor Judgment of Foreclosure and Sale on May 18, 2022 (**EXHIBIT B**). Other than the publication requirements set forth in N.Y. Real Prop. Acts. Law § 231(2) nothing is stopping the Creditor from scheduling a foreclosure sale and auctioning the Premises under New York law. Creditor would be able to hold a foreclosure auction without the significant expense of the Trustee's fees, her legal fees, and MYC's broker fees. Conducting the sale without having to pay such fees would allow a significantly larger amount of the proceeds of a foreclosure sale to be applied toward satisfying the judgment. Furthermore, if this case is dismissed there is no risk of loss or dissipation of the sole asset in the case. Creditor has a mortgage on the Premises and has an active notice of pendency filed in connection with the foreclosure action. Debtor could do nothing to impair Creditor's security

interest in the Premises. Dismissing the case does nothing to impair Creditor's rights in relation to the Premises. Creditor would in no way be prejudiced if this case were dismissed.

### 3. *Debtor is Not Eligible for a Discharge Under Any Scenario*

As the Debtor in a Limited Liability Company it is not eligible to receive a discharge in this proceeding. Dismissing the case will therefore have no effect on Debtor's ability to obtain a discharge.

### 4. *Dismissal Would be in All Parties Best Interest*

Aside from satisfying the relevant factors established by the Second Circuit in Murray, dismissing this case would undoubtedly serve the best interest of both Debtor and Creditor. From the Debtor's perspective the massive fees that would be incurred if the Trustee was permitted to auction the Premises would make it much more likely that the full judgment amount of $13,263,173.12 would not be satisfied. This could be disastrous for Garofalo who signed a personal guarantee when the hard money loan was made in 2018. An example of how the additional fees incurred in a Trustee's sale could leave Garofalo liable for any deficiency illustrates this point:

If the Trustee's auction sold the property to a third property for $14,000,000.00 the following fees would be incurred:

$560,000.00    Real Estate Broker Fee to MYC (4%)
$443,250.00    Trustee's fee (as determined by 11 U.S.C. § 326(a))

Such a sale would yield $1,003,250.00 in fees for MYC and the Trustee without even taking into account what LaMonica's legal fees would be. This example would leave only

8

$12,996,750.00 to go towards satisfying Creditor's judgment and would expose Garofalo to a judgment of $266,426.00 that he would be liable for under the personal guarantee.

While it is not the undersigned's role to argue what would be best for the Creditor, it seems fairly obvious that Creditor's best interests are served if it is able to apply as much of a winning bid to satisfy the judgment as opposed to have 7+% of it go to pay the Trustee, her broker, and her attorneys.

None of these fees would be a factor if this case is dismissed and the Creditor were to hold a foreclosure sale under state law.

The only parties who would benefit from the Trustee's sale going forward are the Trustee, her attorneys, and the real estate broker  Creditor would see the amount it receives significantly reduced due to the fees incurred by selling the Premises through a Trustee's sale.  Creditor would not be prejudiced in any way if this case was dismissed as it would be free to avail itself to state court remedies to satisfy the judgment.

Debtor receives no benefit from this case remaining open as it can receive no discharge. Garofalo would be put in particular jeopardy if the Trustee were to go through with the sale as the significant fees associated with such sale would expose him to liability under the personal guarantee. By reason of the foregoing, the Court should find that cause if present to dismiss this case under 11 U.S.C. § 707(a).

## II. THE COURT SHOULD PERMIT DEBTOR'S REQUEST FOR RELIEF TO BE BROUGHT BY ORDER TO SHOW CAUSE

The undersigned appeared on behalf of the Debtor on June 21, 2024. (**ECF No. 25**). Since such time, Giovanni Garofalo, Garafalo's 89-year-old father, was moved to hospice care. He died this past Saturday on July 27, 2024 after spending four weeks in hospice. Attached hereto as

**EXHIBIT D** is a copy of the memorial card from Giovanni Garofalo's wake. Garofalo, sole owner of the Debtor, was unable to meet with me to prepare the within request for relief until today (August 1, 2024), the day after his father was buried. It is respectfully submitted that the family obligations brough about by Garofalo's father's death are sufficient grounds under Local Rule 9077-1 for the Court to hear Debtor's request for Relief through an Order to Show Cause as opposed to Notice of Motion. It is further submitted that the Court should stay the Trustee's sale, presently scheduled for August 8,210 2024, pending the hearing and resolution of this Order to Show Cause. If the Court grants Debtor's request to dismiss the case the Trustee's sale of the Premises could not take place as this Court would no longer have jurisdiction over the Debtor.

Dated: Elmhurst, New York
August 1, 2024

By: _____
CLIFFORD OLSHAKER
Attorney for Debtor
143-30 SANFORD AVE LLC
Law Office of Clifford Olshaker, P.C.
40-47 75th Street, 3rd Floor
Elmhurst, NY 11373
Phone (718) 429-2505
Fax (718) 429-2096
Cliffordolshaker@yahoo.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that on August 1, 2024, a copy of the foregoing Notice of Appearance was served via ECF and 1st Class Mail on the following parties:

Lore Lapin Jones
Chapter 7 Trustee
98 Cutter Mill Road - Suite 255 South
Great Neck, New York 11021

143-30 Sanford Ave LLC
143-30 Sanford Avenue
Flushing, NY 11355

Office of the United States Trustee
Eastern District of New York - Brooklyn
Alexander Hamilton Custom House
One Bowling Green, Suite 510
New York, NY 10004-1408

Vincent Garofalo
158-15 Cross Island Parkway
Whitestone, NY 11357

Kevin J. Nash, Esq.
Goldberg Weprin Finkel Goldstein LLP
125 Park Avenue, 12th Floor
New York, NY 10017

Doris Shen
Hirshmark Capital LLC
1140 Broadway, Suite 304
New York, NY 10001

Gerard A. Geisweller, Esq.
Mattone, Mattone, Mattone, LLP
134-01 20th Avenue
College Point, NY 11356

LaMonica Herbst & Maniscalco, LLP
Counsel to Lori Lapin Jones as Chapter 7 Trustee
3305 Jerusalim Avenue, Suite 201
Wantaugh, NY 11793