UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re:                                                    Chapter 7

143-30 SANFORD AVE LLC,                                   Case No.: 23-43812-nhl

                              Debtor.
--------------------------------------------------------x

### ORDER: (I) APPROVING A STIPULATION AMONG THE CHAPTER 7 TRUSTEE, SANFORD FUNDING LLC AND GERARD A. GEISWELLER, ESQ.; (II) AUTHORIZING THE SALE OF THE DEBTOR'S REAL PROPERTY; (II) SCHEDULING A PUBLIC AUCTION SALE OF THE DEBTOR'S REAL PROPERTY; (IV) APPROVING TERMS AND CONDITIONS OF SALE TO GOVERN THE PUBLIC AUCTION SALE OF THE DEBTOR'S REAL PROPERTY; (V) APPROVING THE FORM AND MANNER OF NOTICE OF THE PUBLIC AUCTION SALE OF THE DEBTOR'S REAL PROPERTY; (VI) SCHEDULING A HEARING TO CONFIRM THE RESULTS OF THE PUBLIC AUCTION SALE; AND (VII) WAIVING THE 14-DAY STAY PERIOD

Upon that portion of the motion ("Authorization Motion")[1] of Lori Lapin Jones, solely in her capacity as Chapter 7 Trustee ("Trustee") of the estate of 143-30 Sanford Ave LLC ("Debtor"), seeking entry of an Order: (i) approving a stipulation among the Trustee, Sanford Funding LLC and Gerard A. Geisweller, Esq. ("Stipulation"); (ii) authorizing the sale of the Debtor's real property and improvements located at 143-30 Sanford Avenue, Flushing, New York 11355 ("Property"); (iii) scheduling a public auction sale of the Property for Thursday, August 8, 2024 at 10:30 a.m. ("Sale"); (iv) approving the proposed Terms and Conditions of Sale to govern the Sale; (v) approving the form and manner of notice of the Sale; (vi) scheduling a hearing to confirm the results of the Sale; and (vii) waiving the 14-day stay period; and upon the Order scheduling a hearing ("Scheduling Order") for May 23, 2024 at 9:30 a.m. ("Hearing"), at which appeared Kevin J. Nash, Esq. (Counsel to Sandford Funding), Gary F. Herbst, Esq. (Counsel to Trustee), Lori

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meanings ascribed to them in the Procedures Motion.

Lapin Jones, Esq. (Trustee), Holly R. Holecek, Esq. (Counsel to Trustee); and upon the Affidavits of Service evidencing proof of service of the Motion and Scheduling Order; and the Trustee having incorporated certain comments from the United States Trustee in this Order and the Terms and Conditions of Sale; and upon the record of the Hearing; and no objections having been filed to the Authorization Motion; and after due deliberation and good cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT**:[2]

A.      This Court has jurisdiction over the Authorization Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Authorization Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      Good and sufficient notice of the relief sought in the Authorization Motion has been given and no further notice is required. A reasonable opportunity to object or be heard regarding the relief requested in the Authorization Motion has been afforded to interested persons and entities, including: (i) the Debtor; (ii) Sanford Funding LLC ("Lender"), though counsel; (iii) Gerard A. Geisweller, Esq.; (iv) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (v) all known creditors of the Debtor; and (vi) known parties who have asserted a lien or interest in the Property (collectively, "Notice Parties").

C.      The Stipulation was negotiated at arm's-length and in good faith.

D.      The settlement set forth in the Stipulation falls above the lowest point in the range of reasonableness.

---

[2]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact, when appropriate. See FED. R. BANKR. P. 7052.

E.      The proposed Notice of Sale is good, appropriate, adequate, and sufficient, and service on the Notice Parties is reasonably calculated to provide all interested parties timely and proper notice of the Sale, and no other or further notice of the Sale is required.

F.      The Trustee has articulated good and sufficient reasons for this Court to grant the relief requested in the Authorization Motion, including this Court's approval of the Terms and Conditions of Sale and the form and manner of service of the Notice of Sale.

G.      The Trustee has articulated good and sufficient reasons for, and the best interests of the Debtor's estate will be served by, this Court scheduling a Sale Approval Hearing to consider whether to grant the remainder of the relief requested in the Authorization Motion.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Stipulation, a copy of which is annexed hereto as **Exhibit A**, is approved in its entirety.

2.      The Trustee is authorized to sell the Property in accordance with the Stipulation.

3.      The Terms and Conditions of Sale, a copy of which are annexed hereto as **Exhibit B**, are hereby approved.

4.      The Sale of the Property will be conducted by Zoom (or other virtual platform) on Tuesday, June 25, 2024 at 10:30 a.m. (Eastern), or such other later date or time as the Trustee deems appropriate, notice of which will be filed on the electronic case docket in this case prior to June 25, 2024.

5.      The Highest Bidder or, as applicable, the Second Highest Bidder (other than the Lender) shall be solely responsible to pay the commissions of the Trustee's retained broker, MYC & Associates, Inc., the amount of four (4%) percent of the amount bid by the Highest Bidder or, as applicable, the Second Highest Bidder at the Sale.

6.    The Trustee is authorized to take any and all actions necessary or appropriate to implement the Sale.

7.    All objections to entry of this Order or to the relief provided herein and requested in the Authorization Motion that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled in their entirety.

## SALE APPROVAL HEARING

8.    The Sale Approval Hearing shall be held before this Court on **June 27, 2024 at 2:00 p.m.**

9.    The Sale Approval Hearing may be adjourned by the Trustee by filing a notice with this Court and serving such notice on the Notice Parties.

## NOTICE

10.    The Notice of Sale, substantially in the form annexed to the Authorization Motion as Exhibit D, is hereby approved.

11.    The Trustee shall cause notice of the Sale to be published at least once in an appropriate publication pursuant to Bankruptcy Rule 2002(I).

12.    The notice as set forth in the preceding paragraphs shall provide good and sufficient notice of the Sale and the Sale Approval Hearing and no other or further notice of the Sale or the Sale Approval Hearing shall be necessary or required.

## ADDITIONAL PROVISIONS

13.    Notwithstanding Bankruptcy Rule 6004(h), this Order shall not be stayed for fourteen (14) days after the entry hereof and shall be effective and enforceable immediately upon entry hereof.

14.   The Trustee is authorized and empowered to take such steps, incur and pay such costs and expenses, and do such things as may be reasonably necessary to fulfill the requirements established by this Order.

15.   This Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Dated: May 24, 2024
   Brooklyn, New York



_Nancy Hershey Lord_
Nancy Hershey Lord
United States Bankruptcy Judge

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:                                                            Chapter 7

143-30 SANFORD AVE LLC,                                           Case No.: 23-43812-nhl

               Debtor.
------------------------------------------------------------x

**STIPULATION PROVIDING FOR: (I) CONTINUANCE OF RECEIVERSHIP; (II) USE
OF CASH; (III) ADVANCES TO BE MADE BY SANFORD FUNDING LLC; AND (IV) A
CARVE-OUT FROM THE CLAIM OF SANFORD FUNDING LLC IN CONNECTION
WITH THE SALE OF THE REAL PROPERTY LOCATED AT 143-30 SANFORD
AVENUE, FLUSHING, NEW YORK 11355**

      This Stipulation is made as of April 19 2024 by and between Lori Lapin Jones, solely in

her capacity as Chapter 7 Trustee ("Trustee") of the Estate of 143-30 Sanford Ave LLC ("Debtor"),

Sanford Funding LLC ("Lender"), and Gerard A. Geisweller, Esq. ("Receiver") (the Trustee,

Lender and Receiver are each a "Party" and collectively are "Parties").

<u>RECITALS</u>

      WHEREAS, on October 19, 2023 ("Filing Date"), a voluntary petition under Chapter 7 of

title 11 of the United States Code ("Bankruptcy Code") was filed on the Debtor's behalf in the

United States Bankruptcy Court for the Eastern District of New York ("Court");

      WHEREAS, Lori Lapin Jones is the Chapter 7 Trustee of the Debtor's estate;

      WHEREAS, public records reflect that, as of the Filing Date, the Debtor was the fee owner

of the real property and improvements known as and located at 143-30 Sanford Avenue, Flushing,

New York 11355 ("Property");

      WHEREAS, the Property consists of an approximately 59,231 square foot apartment

building that is currently partially occupied with tenants;

      WHEREAS, on or about August 8, 2018, Lender made a loan ("Loan") to the Debtor in the

1

principal sum of eight million seven hundred and fifty thousand dollars ($8,750,000), which Loan is evidenced by a mortgage note dated as of August 8, 2018 ("Note");

WHEREAS, to secure its obligations under the Note, the Debtor, as mortgagor, delivered to Lender, as mortgagee, a mortgage dated as of August 8, 2018 ("Mortgage"), which Mortgage was recorded with the New York City Register ("Register");

WHEREAS, in connection with the Note and Mortgage, the Debtor executed an Assignment of Leases and Rents dated as of August 8, 2018 ("ALR"), which ALR was recorded with the Register, and pursuant to which the Debtor assigned all its leases and rents to Lender;

WHEREAS, the Loan matured on September 1, 2020;

WHEREAS, by complaint dated April 15, 2021, Lender commenced an action in the Supreme Court of the State of New York, County of Queens ("State Court") against, among others, the Debtor to foreclose its mortgage on the Property ("Foreclosure Action"), which action was assigned index no. 7090578/2021;

WHEREAS, the Debtor defaulted in the Foreclosure Action;

WHEREAS, on May 18, 2022, the State Court entered an Order of Reference and Default Judgment in the Foreclosure Action pursuant to which, inter alia, a referee was appointed to compute the amounts owed to Lender;

WHEREAS, on September 30, 2022, the State Court entered an Order in the Foreclosure Action pursuant to which, inter alia, the Receiver was appointed and authorized to take charge and enter into the Property ("Receivership Order");

WHEREAS, on June 26, 2023, the State Court entered an Order in the Foreclosure Action that, inter alia, confirmed the referee's report dated July 20, 2022, granted a judgment of foreclosure and sale, and denied a cross-motion of the Debtor and its principal to vacate their

default and interpose a late answer;

WHEREAS, on July 26, 2023, a Notice of Appeal of the State Court's June 26, 2023 Order was filed on behalf of the Debtor and its principal in the Foreclosure Action;

WHEREAS, on August 15, 2023, the State Court entered a Judgment of Foreclosure and Sale ("JFS") in the Foreclosure Action;

WHEREAS, the JFS provides that Lender was owed $13,263,173.12 with interest at the rate in the Note from June 1, 2022, together with, _inter alia_, any advances as provided for in the Note and Mortgage for taxes, insurance, and any other charges to maintain the Property pending the sale of the Property;

WHEREAS, on August 31, 2023, the Receiver filed a Notice of Sale of the Property with a sale date of October 20, 2023, _i.e.,_ the day after the Filing Date, which foreclosure sale was stayed by virtue of the Debtor's commencement of this Chapter 7 case;

WHEREAS, the Trustee intends to sell the Property in accordance with, _inter alia_, section 363 of the Bankruptcy Code and subject to further Order(s) of the Court ("363 Sale");

WHEREAS, the Trustee and Lender recognize and agree that the proceeds from the 363 Sale of the Property may be insufficient to satisfy the Mortgage held by Lender and all administrative costs and expenses associated with the 363 Sale;

WHEREAS, the Trustee has determined that funds are required to maintain the Property pending its sale, and the Trustee does not have any funds in the Debtor's estate;

WHEREAS, the Trustee and Lender recognize and agree that it is in the best interests of the estate, including the occupants of the Property, for the Receiver to remain in possession of the Property and to continue to take such actions, incur such expenses, and disburse funds as the Receiver believes in his reasonable discretion are necessary, desirable and/or appropriate and

3

consistent with the Receivership Order to preserve the Property, including to conduct emergency repairs, pending a closing on the sale of the Property; and

WHEREAS, the Trustee, Lender and Receiver, through their respective counsel, have negotiated and entered into this Stipulation and Order ("Stipulation"), which, among other things, provides for the continuance of the receivership to the extent set forth herein, the use of cash generated from the Property, advances to be made by Lender, and a carve-out from the proceeds on account of the claim of Lender.

NOW, THEREFORE, in consideration of the foregoing, it is hereby stipulated and agreed by and between the Trustee, Lender and the Receiver (collectively, "Parties" and each a "Party") as follows:

1. This Stipulation is contingent upon: (a) approval of the Court; and (b) the funding by the Lender to the Trustee of sufficient funds to pay for liability insurance. Should the Court decline to approve the Stipulation, this Stipulation shall have no force or effect.

**A. The Continued Receivership**

2. Absent further Order of this Court and subject to the turnover and reporting terms and conditions set forth in paragraph 4 below: (a) the Receiver is excused from the turnover and reporting requirements set forth in sections 543(a) and (b) of the Bankruptcy Code; (b) the Receiver shall have the rights, powers, authority, and responsibilities set forth in the Receivership Order; and (c) the Receiver may not petition the State Court to modify his rights, powers, authority, and responsibilities except on notice to the U.S. Trustee, the Trustee and Lender, with a copy of such notice and request for relief of the State Court to be filed by the Receiver in this Court. Absent an issue of safety, the Receiver shall not incur out of the ordinary course expenses without approval of the Court.

3.      Lender consents to the use of funds generated from the Property for the operation and maintenance of the Property.

4.      By no later than the 10th day of each month, the Receiver shall provide the Trustee with detailed reporting of the cash receipts and disbursements relating to the Property for the preceding month including, but not limited to, copies of bank statements reflecting such cash receipts and disbursements. The Receiver shall also provide the U.S. Trustee, the Trustee, and Lender with information reasonably requested by them in writing within five (5) business days including, without limitation, the information required by section 543(b)(2) of the Bankruptcy Code and Rule 6002 of the Federal Rules of Civil Procedure.

5.      Promptly upon closing of any sale of the Property, the Receiver shall: (a) deliver to the purchaser thereof possession of the Property and any tenant security deposits under his custody and control; (b) deliver to the Trustee all non-security deposit funds that he is holding, which funds shall become property of the Debtor's estate free and clear of any liens of Lender; and (c) deliver to the purchaser possession of any tenant leases, future rents and rental arrears in or that come into his possession, custody, or control.

6.      Any and all compensation of the Receiver and his professionals shall be the sole responsibility of the Lender.

7.      The Trustee shall not be liable for the management and/or operation of the Property including, but not limited to, the Receiver's actions or inactions with respect to the Property.

**B.      The Maintenance and Sale of the Property**

8.      Lender shall advance cash to the Trustee (on behalf of the Debtor's estate) pursuant to and on the same terms as the Mortgage and Note ("Cash Advances") for the maintenance and payment of liability insurance relating to the Property in which the Trustee is the named insured.

The Trustee shall request that Lender and the Receiver be named as additional insureds on any such policy. Lender shall continue to maintain and pay for property insurance on the Property until the earlier of the closing on the 363 Sale of the Property or the effective date of the Trustee's abandonment of the Property.

9.    Lender consents to the 363 Sale of the Property by the Trustee.

10.    The Trustee shall seek entry of an Order of the Court retaining MYC & Associates, Inc. as real estate broker ("Broker") to market and sell the Property.

11.    Lender shall have an allowed claim in the amount of $16,631,612.75 as of March 31, 2024, plus any Cash Advances made to the Debtor's estate ("Allowed Secured Claim").

12.    Lender hereby agrees that, if the Trustee sells the Property to a third party, the Trustee (on behalf of the Debtor's estate) shall retain a carve-out of funds from the proceeds of the sale of the Property and the Mortgage ("Third-Party Sale Carve-Out") sufficient and necessary to pay:

a.    in the event the gross sales price is $11,400,001 or more: (a) any and all liens on the Property that are of higher priority than the Mortgage including, but not limited to, any and all outstanding real estate and school taxes, water and sewer liens, or other liens; (b) any reasonable, customary closing costs and/or fees required to be paid by the estate at or in connection with the closing on the sale of the Property; (c) federal, state, city and/or any other taxes for which the estate may be liable (if any); (d) the sum of $273,000 for: (i) the Trustee's commission and out-of-pocket expenses (which commission and expenses shall be subject to separate Order of the Court); (ii) the fees and expenses of the Trustee's retained attorneys (which fees and expenses shall be subject to separate Order of the Court); and (iii) the fees and expenses of the Trustee's retained accountants (which fees and expenses shall be subject to separate Order of the Court); (e) the sum of 4% of the gross sales price for the Broker's commission (which commission shall be in the form of a buyer's premium, shall be inclusive of the Broker's out-of-pocket expenses, and shall be subject to separate Order of the Court); (f) all other allowed Chapter 7 administrative expense claims including, but not limited to, operating expenses relating to the Property; and (h) the sum of $35,000 for payment of allowed claims in accordance with the Bankruptcy Code; or

b.      in the event the gross sales price is \$11,400,000 or less: (a) any and all liens on the Property that are of higher priority than the Mortgage including, but not limited to, any and all outstanding real estate and school taxes, water and sewer liens, or other liens; (b) any reasonable, customary closing costs and/or fees required to be paid by the estate at or in connection with the closing on the sale of the Property; (c) federal, state, city and/or any other taxes for which the estate may be liable (if any); (d) the sum of \$248,000 for: (i) the Trustee's commission and out-of-pocket expenses (which commission and expenses shall be subject to separate Order of the Court); (ii) the fees and expenses of the Trustee's retained attorneys (which fees and expenses shall be subject to separate Order of the Court); and (iii) the fees and expenses of the Trustee's retained accountants (which fees and expenses shall be subject to separate Order of the Court); (e) the sum of 4% of the gross sales price for the Broker's commission (which commission shall be in the form of a buyer's premium, shall be inclusive of the Broker's out-of-pocket expenses, and shall be subject to separate Order of the Court); (f) all other allowed Chapter 7 administrative expense claims including, but not limited to, operating expenses relating to the Property; and (g) the sum of \$25,000 for payment of allowed claims in accordance with the Bankruptcy Code.

To the extent portions of the Third-Party Sale Carve-Out are unliquidated, the Trustee and Lender will work in good faith to resolve any disputes and, to the extent they cannot resolve any such disputes, the Trustee shall seek Court intervention.

13.     In the event the Trustee does accept or receive an offer from a third party to purchase the Property, Lender shall credit bid for the Property. Pursuant to section 363(k) of the Bankruptcy Code, Lender may credit bid up to the amount of the Allowed Secured Claim.

14.     In the event that Lender is the successful bidder for the Property, then Lender, its designee or assignee shall, in exchange for the delivery of a Trustee's Deed for the Property tender to the Trustee sums sufficient and necessary to pay ("Lender Sale Carve-Out"):

(a) any and all liens on the Property that are of higher priority than the Mortgage including, but not limited to, any and all outstanding real estate and school taxes, water and sewer liens, or other liens; (b) any reasonable, customary closing costs and/or fees required to be paid by the estate at or in connection with the closing on the sale of the Property; (c) federal, state, city and/or any other taxes for which the estate may be liable (if any); (d) the sum of \$130,000 for: (i) the Trustee's commission, but in an amount not less than \$60,000, and out-of-pocket expenses (which commission and

7

expenses shall be subject to separate Order of the Court); (ii) the fees and expenses of the Trustee's retained attorneys (which fees and expenses shall be subject to separate Order of the Court); and (iii) the fees and expenses of the Trustee's retained accountants (which fees and expenses shall be subject to separate Order of the Court); (e) the sum of $75,000 for the Broker's commission, and out-of-pocket expenses not to exceed $30,000 (which commission and expenses shall be subject to separate Order of the Court); (f) all other allowed Chapter 7 administrative expense claims including, but not limited to, operating expenses relating to the Property; and (g) the sum of $20,000 for payment of allowed claims in accordance with the Bankruptcy Code.

15.     The Trustee shall be authorized to distribute, within five (5) business days of receipt of the sale proceeds and without further order of the Court, the remaining proceeds of sale of Property to Lender on account of, and in reduction of, the Allowed Secured Claim.

16.     In the event that the sale proceeds do not exceed the sums due to Lender on account of the Allowed Secured Claim (including the Third-Party Sale Carve-Out or, as applicable, Lender Sale Carve-Out) as contemplated in paragraphs 12 and 14 above, Lender waives any right to share in the Third-Party Sale Carve-Out or, as applicable, Lender Sale Carve-Out.

17.     Nothing contained herein is a waiver of any of the Trustee's or Lender's rights to contest or otherwise object to the claims of any junior lien holders or any other party asserting a claim or interest against Property or the proceeds of sale.

**C.    Miscellaneous**

18.     This Stipulation shall be effective upon entry of an Order of the Court approving this Stipulation and that Order becoming final and non-appealable.

19.     This Stipulation may be executed in one or more counterparts, each of which shall be deemed an original and shall be binding on any party executing this Stipulation, all of which shall constitute one and the same document. Signatures delivered by electronic mail or facsimile shall have the same force and effect as those original signatures.

20.     This Stipulation shall be governed by and construed under applicable federal law and/or the laws of the State of New York.

21.     The Court shall retain jurisdiction to determine any dispute which may arise under the terms of this Stipulation.

22.     This Stipulation may not be amended or modified other than in writing executed by each of the Parties.

23.     This Stipulation sets forth the entire agreement between the Parties and fully supersedes any and all prior agreements and understandings, written or oral, between the Parties pertaining to the subject matter hereof.

24.     This Stipulation shall be binding upon the Parties, their respective heirs, executors, successors, administrators and assigns.

Dated: April 19 2024
       Wantagh, New York

                          **LaMONICA HERBST & MANISCALCO, LLP**
                          *Counsel to Lori Lapin Jones, as Chapter 7 Trustee*

By:                    *Holly R. Holecek*
                          Holly R. Holecek, Esq.
                          Gary F. Herbst, Esq.
                          3305 Jerusalem Avenue, Suite 201
                          Wantagh, New York 11793
                          Telephone: (516) 826-6500

Dated: April _____, 2024
     New York, New York

                  **GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP**
                  *Counsel to Sanford Funding LLC*

        By:   _____
                  Kevin J. Nash, Esq.
                  1501 Broadway, 22nd Floor
                  New York, New York 10036
                  Telephone: (212) 301-6944

Dated: April __, 2024
     College Point, New York

                  **MATTONE, MATTONE, MATTONE LLP**
                  *Counsel to Gerard A. Geisweller, Esq.*

        By:   _____
                  Gerard A. Geisweller, Esq.
                  134-01 20th Avenue
                  College Point, New York 11356
                  Telephone: (718) 353-8880

Dated: April _____, 2024
    New York, New York

**GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP**
*Counsel to Sanford Funding LLC*

By: _____

Kevin J. Nash, Esq.
1501 Broadway, 22nd Floor
New York, New York 10036
Telephone: (212) 301-6944

Dated: April 17, 2024
    College Point, New York

**MATTONE, MATTONE, MATTONE LLP**
*Counsel to Gerard A. Geisweller, Esq.*

By: _____

Gerard A. Geisweller, Esq.
134-01 20th Avenue
College Point, New York 11356
Telephone: (718) 353-8880

# EXHIBIT B

## TERMS AND CONDITIONS OF SALE

1.  These Terms and Conditions of Sale are promulgated in connection with the public sale ("Sale") of the real property and improvements known as and located at 143-30 Sanford Avenue, Flushing, New York 11355 ("Property").

2.  The Sale will be conducted on **Tuesday, June 25, 2024 at 10:30 a.m. (Eastern)**. The Sale will be conducted by Zoom (or other virtual platform) (instructions to be provided separately in advance of the Sale).

3.  The seller of the Property is Lori Lapin Jones, solely in her capacity as Chapter 7 Trustee ("Trustee") of the estate of 143-30 Sanford Ave LLC ("Debtor"). The Debtor's Chapter 7 bankruptcy case is pending in the United States Bankruptcy Court for the Eastern District of New York ("Bankruptcy Court") under case no.: 23-43812-nhl.

4.  The Property is encumbered by first priority liens of Sanford Funding LLC ("Lender"), including, without limitation, a mortgage ("Mortgage") held by the Lender. The Lender is represented by Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, 22nd Floor, New York, New York 10036. The Trustee and the Lender entered into a certain stipulation of settlement, which, among other things, allowed the Lender's secured claim ("Lender Stipulation").

5.  The Sale is being conducted pursuant to an Order of the Bankruptcy Court dated _____, 2024 ("Authorization Order") and sections 363 (b), (d), (f) and (m) of title 11 of the United States Code ("Bankruptcy Code"), free and clear of all Interests (as defined below in paragraph 19(b)).

6.  In accordance with the Authorization Order and the Lender Stipulation, the Lender may credit bid for the Property at the Sale pursuant to section 363(k) of the Bankruptcy Code. The Lender: (a) shall in all events be deemed a qualified bidder at the Sale and be permitted to bid at the Sale; (b) shall not be required to pay a Qualifying Deposit (as defined below in ¶7) or any other Deposit (as defined below in ¶11) of any kind whatsoever, and (c) shall not be required to pay a Buyer's Premium (as defined below in ¶10).

7.  To register for the Sale and bid on the Property, **by 5:00 p.m. on Monday, June 24, 2024**, each prospective bidder (other than the Lender) must deliver to the Trustee: (a) a certified or bank check drawn of the account of such bidder and payable to "Lori Lapin Jones, as Trustee" in the amount of five hundred thousand dollars ($500,000) ("Qualifying Deposit"), which amount shall serve as a good faith deposit against payment of the purchase price for the Property; and (b) these Terms and Conditions of Sale, executed by such prospective bidder. The Trustee reserves the right to reject any bidder (other than the Lender) who, in the sole discretion of the Trustee, the Trustee believes is not financially capable of consummating the purchase of the Property.

8.  At the conclusion of the Sale, the first highest bidder ("Highest Bidder") and the second highest bidder ("Second Highest Bidder") for the Property must also execute, and thereby agree to be bound by, a Memorandum of Sale in the form annexed hereto.

9.  At the conclusion of the Sale, the Trustee or her representative will return the Qualifying Deposits to all bidders except the Highest Bidder and the Second Highest Bidder. The Second

Highest Bidder's Qualifying Deposit will be returned within two business days after the Highest Bidder posts the entire Deposit (as defined below in ¶11).

10. In accordance with the Authorization Order, the Highest Bidder or, as applicable, the Second Highest Bidder (other than the Lender) shall be solely responsible to pay the Trustee's retained broker, MYC & Associates, Inc., four (4%) percent of the amount bid by the Highest Bidder or, as applicable, the Second Highest Bidder at the Sale (such percentage amount being the "Buyer's Premium"). The sum of the amount bid at the Sale and the Buyer's Premium is defined herein as the "Purchase Price".

11. **By 5:00 p.m. on Wednesday, June 26, 2024**, the Highest Bidder (other than the Lender) shall deliver to the Trustee, by certified check, bank check, or wire transfer drawn on an account of the Highest Bidder an amount equal to 10% of the Purchase Price <u>minus</u> the amount of the Qualifying Deposit, as and for a good faith deposit (such amount, plus the Qualifying Deposit, hereinafter "Deposit").

12. The Highest Bidder (other than the Lender) must pay the balance of the Purchase Price to the Trustee, by wire transfer drawn on an account of the Highest Bidder at the closing of title to the Property ("Closing").

13. The Highest Bidder must close title to the Property on or before **3:00 p.m. on Tuesday, July 23, 2024** ("Closing Date"), **TIME BEING OF THE ESSENCE as to the Highest Bidder**, although such date may be extended solely by the Trustee with the consent of the Lender, which shall not be unreasonably withheld. The Closing shall take place on or before the Closing Date at the offices of the attorneys for the Trustee, LaMonica Herbst & Maniscalco LLP, 3305 Jerusalem Avenue, Suite 201, Wantagh, New York 11793 or by mail, as elected by the Trustee.

14. Real estate taxes, water and sewer charges, and rent/use and occupancy (only to the extent actually received by or on behalf of the Debtor's estate) will be apportioned as of 12:00 a.m. on the Closing Date. There will be no other apportionments pertaining to the Property.

15. The Highest Bidder shall pay, on the Closing Date, any and all city, county, state or other transfer taxes incurred by or in connection with the transfer of the Property.

16. In connection with the Closing and Closing Date, the Highest Bidder is hereby given notice that **TIME IS OF THE ESSENCE against the Highest Bidder and the failure of the Highest Bidder to close for any reason whatsoever (except as otherwise provided below), including its failure to pay the balance of the Purchase Price on the Closing Date, will result in the Trustee retaining the Deposit and the termination of the Highest Bidder's right to acquire the Property under these Terms and Conditions of Sale**. The Trustee's right to retain the monies paid including, without limitation, the Deposit, is not a penalty but rather liquidated damages and it is hereby agreed and acknowledged by the parties hereto that the amount of damages sustained by the Trustee are difficult to determine and the liquidated damages set forth herein are reasonable under the circumstances. The Highest Bidder shall be obligated to close title to the Property and there is no contingency of any kind or nature that will permit the Highest Bidder to cancel or avoid its obligation under these Terms and Conditions of Sale other than the Trustee's inability to deliver insurable title to the Property. Further, the Highest Bidder shall have demonstrated, to the sole

satisfaction of the Trustee, evidence of its ability to conclude the transaction upon these Terms and Conditions of Sale without delay. **Expenses incurred by the Highest Bidder, or any competing bidder, including concerning any due diligence, such as obtaining title reports, shall be the sole responsibility of such bidder and under no circumstances shall the Trustee, the estate or the Trustee's professionals be responsible for, or pay, such expenses**.

17.    In the event that the Highest Bidder for the Property fails to tender the payment of the balance of the Purchase Price on the Closing Date, or otherwise perform any of its obligations under these Terms and Conditions of Sale, the Trustee, at her sole option with the consent of the Lender, which shall not be unreasonably withheld, shall be authorized to sell the Property to the Second Highest Bidder without any further notice, without giving credit for any Deposit forfeited by the Highest Bidder, and upon such other terms and conditions as the Trustee deems appropriate in consultation with the Lender. Should the Second Highest Bidder fail to close on the Property within such time as the parties may agree but not to exceed 45 days after notice from the Trustee to the Second Highest Bidder, the Trustee shall be authorized to sell the Property to the next highest or best bidder, without the necessity of any further notice. In either event, the Second Highest Bidder or the next highest or best bidder shall be deemed to be "Highest Bidder" under these Terms and Conditions of Sale and shall be bound by these Terms and Conditions of Sale.

18.    The Trustee and her professionals, including the Trustee's retained broker, MYC & Associates, Inc., have not made, and do not make, any representations or warranties of any kind, including, but not limited to, as to the physical condition, expenses, operations, leases, rents, tenancies, value of the land or buildings thereon, or any other matter or thing affecting or related to the Property that might be pertinent to the purchase of the Property, and including, without limitation: (a) the current or future real estate tax liability, assessment or valuation of the Property; (b) the potential qualification of the Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (c) the compliance or non-compliance of the Property, in its current or any future state, with applicable present or future zoning ordinances or other land use law or regulation, or the ability to obtain a change in the zoning or use, or a variance in respect to the Property; (d) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Property from any source, including, but not limited to, any state, city or federal government or institutional lender; (e) the current or future use of the Property; (f) the present and future condition and operating state of any and all machinery or equipment on the Property and the present or future structural and physical condition of any building thereon or its suitability for rehabilitation or renovation; (g) the ownership or state of title of any personal property on the Property; (h) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof; (i) any present or future issues concerning subdivision or non-subdivision of the Property; or (j) the compliance or non-compliance with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous materials anywhere on the Property. Each bidder hereby expressly agrees and acknowledges that no such representations or warranties have been made. The Trustee and her professionals, including the Trustee's retained broker, MYC & Associates, Inc., are not liable for or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Property, or any real estate broker, agent, employee, servant or other person or professional representing or purporting to represent the Trustee unless such warranties, guaranties, promises,

3

statements, representations or information are expressly and specifically set forth in writing by the Trustee.

19.     The Property is being sold:

(a)     **"AS IS" "WHERE IS"**, **"WITH ALL FAULTS,"** without any representations, covenants, guarantees or warranties of any kind or nature whatsoever;

(b)     free and clear of any and all monetary interests of whatever kind or nature including, but not limited to, liens, claims, encumbrances, monetary fines or penalties for violations, judgments and/or mortgages (collectively, "Interests"), with such Interests, if any, to attach to the proceeds of sale in such order and priority as they existed immediately prior to the entry of the Order for Relief against the Debtor; and

(c)     subject to, among other things:

(i) any occupancies and/or tenancies;

(ii) any state of facts that an accurate survey may show;

(iii) any state of facts a physical inspection may show;

(iv) any covenants, restrictions and easements of record;

(v) any building or zoning ordinances or other applicable municipal regulations and violations thereof;

(vi) environmental conditions; and

(vii) the conditions giving rise to any and all non-monetary violations existing on the Property as of the Closing Date.

20.     By delivering Qualifying Deposits, each bidder acknowledges that it has had the opportunity to review the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on its own independent investigation of the Property in making its bids. Neither the Trustee nor any of her representatives, including the Trustee's retained broker, MYC & Associates, Inc., make any representations or warranties with respect to the permissible uses of the Property, including, but not limited to, the zoning of the Property. Each bidder acknowledges that it has conducted its own due diligence in connection with the Property and is not relying on any information provided by the Trustee and her professionals.

21.     The Trustee shall convey the Property by delivery of a Trustee's Deed. The quality of title shall be that which any reputable title insurance company authorized to do business in the State of New York is willing to approve and insure. The Trustee may at her option arrange for the issuance of a title insurance policy by such a company at the Highest Bidder's sole cost and expense.

22.     Any notices to the Highest Bidder, Second Highest Bidder or the Trustee hereunder shall be sufficient if sent by email to: (a) counsel for such party; or (b) to such party, and shall be deemed given on the date sent.

23.     Signatures delivered by electronic mail or facsimile shall have the same force and effect as original signatures.

24.     Except as may be authorized by an Order of the Bankruptcy Court, neither the Trustee nor the estate are liable or responsible for the payment of fees of any broker for any bidder including, but not limited to, the Highest Bidder.

25.     Nothing contained in these Terms and Conditions of Sale is intended to supersede or alter any provisions of the Lender Stipulation, the Bankruptcy Code or otherwise interfere with the jurisdiction of the Bankruptcy Court. The Lender and the Trustee shall retain all of their respective rights under the Lender Stipulation. Without limiting the foregoing, if the Lender (or its designee) is the Highest Bidder or the Second Highest Bidder and takes title to the Property, the Lender's Mortgage on the Property shall not merge with any deed to the Property granted by the Trustee to the Lender (or its designee). All of the terms and conditions set forth in these Terms and Conditions of Sale are subject to modification as may be directed by the Trustee or by the Bankruptcy Court. The Trustee reserves the right to modify these Terms and Conditions of Sale at the Sale or thereafter to maintain consistency with the provisions of the Bankruptcy Code and/or prior orders of the Bankruptcy Court, notice of which will be filed on the electronic case docket in the Debtor's Chapter 7 case.

26.     These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference, at the Sale of the Property. By making a bid for the Property, each bidder will be deemed to have acknowledged having read these Terms and Conditions of Sale and agreed to be bound by them.

27.     If the Trustee is unable to deliver title to the Property in accordance with these Terms and Conditions of Sale for any reason whatsoever, her only obligation will be to refund the Deposit to the Highest Bidder (or the Second Highest Bidder) and, upon such refund, the Highest Bidder (or the Second Highest Bidder) shall not have any claim or recourse whatsoever against Property or the Trustee, the Debtor's estate, the Trustee's professionals, or the Lender.

28.     The Trustee reserves the right to withdraw the Property from the Sale, either prior or subsequent to the Sale, for any reason whatsoever, as she deems necessary or appropriate, notice of which will be filed on the electronic case docket in the Debtor's Chapter 7 case.

29.     The Sale of the Property is subject to confirmation by the Trustee. Prior to the Closing, the Bankruptcy Court may enter an Order confirming the results of the Sale.

30.     Each bidder represents and warrants that it is capable of performing its obligations under these Terms and Conditions of Sale and has the financial wherewithal to perform its obligations under these Terms and Conditions of Sale.

31.     Except as disclosed below, each bidder represents and warrants that it has no connections to the Debtor, the Debtor's member (Vincent Garofalo), the Lender, the Trustee and/or

the Trustee's professionals and that is has never been affiliated in any manner whatsoever, or held any interest in, the Debtor:

_____

_____

_____

32.    The Bankruptcy Court shall determine any disputes concerning the Sale of the Property. By participating in the Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes.

I have read these Terms and Conditions of Sale and agree to be bound by them.

Dated: _____, 2024

Bidder Name:

_____

PRINT NAME

_____

SIGNATURE

_____

TITLE (if entity)

Bidder contact information:                    Attorney name and contact information (if any):

_____        _____
ADDRESS                                  NAME

_____        _____
EMAIL                                    FIRM

_____        _____
TELEPHONE                                EMAIL

                                         _____
                                         TELEPHONE

## MEMORANDUM OF SALE- HIGHEST BIDDER

The undersigned has this ____ day of June 2024, agreed to purchase the real property and improvements located at 143-30 Sanford Avenue, Flushing, New York 11355 ("Property"), vested in Lori Lapin Jones, solely in her capacity as Chapter 7 Trustee for the bankruptcy estate of 143-30 Sanford Ave LLC, and being sold for the sum of $_____, and hereby promise and agree to comply with the terms and conditions of the sale of said property, as set forth in the annexed Terms and Conditions of Sale.

| | |
|---|---|
| _____ | _____ |
| PRINT NAME OF PURCHASER | PRINT NAME OF PURCHASER |
| _____ | _____ |
| PURCHASER SIGNATURE | PURCHASER SIGNATURE |
| _____ | _____ |
| PURCHASER TITLE (if entity) | PURCHASER TITLE (if entity) |
| _____ | _____ |
| ADDRESS | ADDRESS |
| _____ | _____ |
| E-MAIL | E-MAIL |
| _____ | _____ |
| TELEPHONE NUMBER | TELEPHONE NUMBER |
| _____ | _____ |
| FAX NUMBER | FAX NUMBER |

## ATTORNEY INFORMATION

Name:      _____
Address:   _____
E-Mail:    _____
Phone:     _____

This verifies that the highest bid in the above sale was for the sum of $_____ and received from _____ the sum of $_____, as a non-refundable deposit for the purchase of the Property pursuant to the Terms and Conditions of Sale.

_____
Lori Lapin Jones, Chapter 7 Trustee
c/o LaMonica Herbst & Maniscalco LLP
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
(516) 826-6500 Phone
(516) 826-0222 Fax

## MEMORANDUM OF SALE - SECOND HIGHEST BIDDER

The undersigned has this ___ day of June 2024, agreed to purchase the real property and improvements located at 143-30 Sanford Avenue, Flushing, New York 11355 ("Property"), vested in Lori Lapin Jones, solely in her capacity as Chapter 7 Trustee for the bankruptcy estate of 143-30 Sanford Ave LLC, and being sold for the sum of $_____, and hereby promise and agree to comply with the terms and conditions of the sale of said property, as set forth in the annexed Terms and Conditions of Sale.

_____          _____
PRINT NAME OF PURCHASER                   PRINT NAME OF PURCHASER

_____          _____
PURCHASER SIGNATURE                       PURCHASER SIGNATURE

_____          _____
PURCHASER TITLE (if entity)               PURCHASER TITLE (if entity)

_____          _____
ADDRESS                                   ADDRESS

_____          _____
E-MAIL                                    E-MAIL

_____          _____
TELEPHONE NUMBER                          TELEPHONE NUMBER

_____          _____
FAX NUMBER                                FAX NUMBER

### ATTORNEY INFORMATION
Name:       _____
Address:    _____
E-Mail:     _____
Phone:      _____

This verifies that the second highest bid in the above sale was for the sum of $_____ and received from _____ the sum of $_____, as a non-refundable deposit for the purchase of the Property pursuant to the Terms and Conditions of Sale.

_____
Lori Lapin Jones, Chapter 7 Trustee
c/o LaMonica Herbst & Maniscalco LLP
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
(516) 826-6500 Phone
(516) 826-0222 Fax